In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00148-CV
______________________________


 
IN THE INTEREST OF JESSICA BROOKS KNOTT, A CHILD
 
 


                                              

On Appeal from the 300th Judicial District Court
Brazoria County, Texas
Trial Court No. 18075*RH01


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Jerry Lee Knott appeals the trial court's modification of a 1992 child support order. On
appeal, he presents four issues: (1) the trial court erred by failing to enter mandatory findings of fact
and conclusions of law, (2) the trial court erred by failing to find there had been no material change
in Jerry's employment or income since entry of the previous child support order, (3) the trial court
erred by not allowing testimony as to Jerry's premarital agreement with his current wife, and (4) the
trial court erred by adding resources of Jerry's current spouse when calculating Jerry's new child
support obligation.


 For the reasons stated below, we sustain Jerry's fourth point of error, reverse
the trial court's judgment, and remand the case for further proceedings consistent with our opinion.
I.         Background
            Jerry and Pauline Knott divorced on August 30, 1989. The divorce decree named Pauline
as managing conservator and Jerry as possessory conservator of the couple's minor child, Jessica
Brooks Knott. The original divorce decree ordered Jerry to pay child support in the amount of
$50.00 per month. On January 24, 1992, the trial court approved an increase in Jerry's monthly child
support obligation to $258.00. 
            In 1995, Jerry married Jan Hess. Before their marriage, Jerry and Jan signed a premarital
agreement. This premarital contract specified that the property each spouse owned before their
marriage, and any income or property generated by that separate property during the marriage, would
remain the separate property of each individual spouse.


 
            On December 5, 2001, Pauline petitioned the trial court to again modify Jerry's child support
obligation. Pauline contended in her petition that the "[c]ircumstances of the children or a person
affected by the Order to be modified have materially and substantially changed since the rendition
of the Order to [be] modified and support payments previously ordered should be increased until the
children are 18 years of age . . . ." 
            On April 25, 2002, the trial court received evidence and heard arguments regarding Pauline's
petition to modify the child support order. At the conclusion of the hearing, the trial court granted
Pauline's petition, increased Jerry's support obligation to $545.31 per month, and ordered him to pay
retroactive support totaling $2,298.48 in monthly installments of $75.00 until such retroactive child
support is paid in full. The trial court filed its written judgment on June 4, 2002. 
II.       Applicable Standards and Burdens of Proof
A.Appellate Standard of Review
            On appeal, we will not disturb a trial court's order setting child support unless the
complaining party shows a clear abuse of discretion. In re Tucker, 96 S.W.3d 662, 664 (Tex.
App.‒Texarkana 2003, no pet.); Starck v. Nelson, 878 S.W.2d 302, 308 (Tex. App.‒Corpus Christi
1994, no writ). A trial court abuses its discretion when it acts "without reference to any guiding rules
and principles." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); see
also Hammond v. Hammond, 898 S.W.2d 406, 407 (Tex. App.‒Fort Worth 1995, no writ).
            B.        Modifying Child Support
            A trial court may modify an order that provides for the support of the child if 
(1) the circumstances of the child or a person affected by the order have
materially and substantially changed since the date of the order's rendition; or 
(2) it has been three years since the order was rendered or last modified and
the monthly amount of the child support award under the order differs by either 20
percent or $100 from the amount that would be awarded in accordance with the child
support guidelines.

Tex. Fam. Code Ann. § 156.401 (Vernon 2002). 
            The movant has the burden to show a requisite change in circumstances has occurred since
the entry of either the last modification or the original divorce decree, whichever is more recent. 
Hammond, 898 S.W.2d at 407. Although increased age may be a factor in determining a change in
circumstances in child support cases, the child's age, when taken alone, will not substantiate an
increase in support "unless the record contains sufficient evidence from which a comparison can be
made between the support needs at the time of the prior order and the current needs of the children." 
Bergerac v. Maloney, 556 S.W.2d 586, 587 (Tex. Civ. App.‒Dallas 1977, writ dism'd). 
III.      Property Classifications and Child Support Determinations
            Before we consider the issues presented, we must first address several unique aspects of
Texas property law as they apply under the Texas Family Code. "The protection of one's right to
own property is said to be one of the most important purposes of government. That right has been
described as fundamental, natural, inherent, inalienable, not derived from the legislature and as
preexisting even constitutions." Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 140 (Tex. 1977) (citing
Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922); 28 A.L.R. 1321 (1924); 16 Am. Jur. 2d
Constitutional Law § 362 (1964)). Our constitution forbids the deprivation of a citizen's life or
property except by due course of law. Tex. Const. art. I, § 16. This constitutional protection
requires not only procedural but also substantive due course of law. Eggemeyer, 554 S.W.2d at 140. 
Furthermore, "one person's property may not be taken for the benefit of another private person
without a justifying public purpose, even though compensation be paid." Thompson v. Consol. Gas
Utils. Corp., 300 U.S. 55, 80 (1936). 
            In Texas, all property acquired by a spouse during the marriage generally belongs to the
marital community, except property acquired by gifts, devises, or descent. Free v. Bland, 369 U.S.
663, 664 (1962). The Texas Constitution, however, explicitly recognizes the rights of couples to
enter into pre-marital agreements, which may be used to alter the classification of spousal property.
[P]ersons about to marry . . . without the intention to defraud pre-existing creditors,
may by written instrument from time to time partition between themselves all or part
of their property, then existing or to be acquired, . . . whereupon the portion or
interest set aside to each spouse shall be and constitute a part of the separate property
and estate of such spouse or future spouse; spouses also may from time to time, by
written instrument, agree between themselves that the income or property from all
or part of the separate property then owned or which thereafter might be acquired
by only one of them, shall be the separate property of that spouse; . . . .

Tex. Const. art. XVI, § 15 (emphasis added). These premarital agreements typically remove
property such as employment income or investment income, or such other property as may be
described in the agreement, from the Texas community property classification system. These
agreements frequently address property currently owned by the person who is about to marry, but
will more often address property one party to the marriage expects to obtain during the course of the
marriage. 
            When a trial court is called on to characterize property held by persons within a marital
estate, it must accord the property its nature as fixed by the Texas Constitution. Eggemeyer, 554
S.W.2d at 139 (disapproving of the trial court's divestiture of the husband's separate property to the
wife in division of the marital estate). Because the Texas Constitution explicitly recognizes the
validity and usefulness of premarital agreements, we believe trial courts should consider the express
effects and intentions of such agreements when determining the value of one spouse's estate,
assuming, of course, the agreement was not made with the intent to defraud a creditor. See id. To
do otherwise would only serve to divest a citizen of his or her separate property for the benefit of
another person without a justifying public purpose. Cf. Thompson, 300 U.S. at 80.
IV.      Including Jan's Income into Calculation for Jerry's Support Obligation
            In his fourth point of error, Jerry contends the trial court erred by adding Jan's income with
his to determine Jerry's net resources in calculating his child support obligation. Jerry argues his
premarital agreement with Jan precludes the characterization of income from her separate property
as community property. At trial, Pauline argued that the Texas Family Code prohibits Jerry from
hiding behind his premarital agreement with Jan to escape paying child support on one half of Jan's
investment income because, but for the premarital agreement, that income would be included in
Jerry's net resources.
            "The right of a child to support may not be adversely affected by a premarital agreement. "
Tex. Fam. Code Ann. § 4.003(b) (Vernon 1998). We believe, however, this provision in the Texas
Family Code merely reflects the Legislature's intent to discourage an obligor from fraudulently
characterizing his or her assets so as to diminish or extinguish the amount of the child support
obligation. Such a reading of Article 4.003(b) is consistent with the constitutional mandate that
premarital agreements not be made for the purpose of committing fraud. Cf. Tex. Const. art. XVI,
§ 15, and Tex. Fam. Code Ann. § 4.003(b). Moreover, Article 4.003(b) of the Texas Family Code
does not override the Texas Constitution's general express approval of premarital agreements that
are not made for fraudulent purposes. See generally Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d
269, 273 (1944), overruled on other grounds, Ex parte Shorthouse, 640 S.W.2d 924, 927-28 (Tex.
1982) (statutes that conflict with the Texas Constitution are void).
            The evidence at trial showed Jerry's 2001 net earnings was $23,089.00. Accordingly, Jerry's
monthly net earnings would be approximately $1,924.00, and his net monthly income would be
$1,482.50. See Tex. Fam. Code Ann. § 154.061 (Vernon 2002). The trial court, however,
computed Jerry's child support obligation at $545.31 per month. Such an obligation would
correspond to net monthly resources of $2,726.55. See Tex. Fam. Code Ann. § 154.125 (Vernon
2002) (calculate support for one child at twenty percent of obligor's net resources). 
            In this case, Jerry and Jan's premarital agreement stated all property owned by either spouse
before the marriage would remain that spouse's separate property. The agreement further provided
that any income from each spouse's separate property earned during the marriage would remain the
separate property of each respective spouse. In characterizing Jerry's property to determine his "net
resources," the trial court should have looked at Jerry's property and classified it according to its
nature under the Texas Constitution. This meant that Jan's investment income, because it should be
characterized as separate property under the constitutionally permitted premarital agreement, should
not have been included in Jerry's net resources.
            Under the child support guidelines, if one looks only at Jerry's income from his building
contractor and cattle businesses, his child support obligation would be substantially less than $545.31
per month. See Tex. Fam. Code Ann. § 154.125. The only other evidence regarding income
consisted of documentary evidence (tax returns) listing Jan's salary and investment income. 
Therefore, it appears the trial court included Jan's earnings (her separate property) to arrive at Jerry's
requisite income level for ordering a $545.31 child support payment. This was error. Accordingly,
we sustain Jerry's fourth point of error.
            Even if the trial court should have ignored the premarital agreement, the Texas Family Code
does not require the inclusion of a spouse's income from dividends, capital gains, and interest
income, even though these items might otherwise be characterized as community property absent
a premarital agreement because (1) the Texas Family Code defines "resources" as one's salary,
interest, dividends, and capital gains, and (2) the Texas Family Code forbids inclusion of the net
resources of the obligor's new spouse in computing the obligor's child support payment. Tex. Fam.
Code Ann. §§ 154.062(b), 156.404(a) (Vernon 2002). Thus, a portion of the spouse's assets that
might traditionally be labeled as community property but are derivative of the spouse's separate
property or employment are outside the items which comprise the obligor's "net resources" because
they would fall entirely within the "net resources" of the obligor's spouse.
            In Starck v. Nelson, the Thirteenth Court of Appeals reviewed a situation in which the trial
court deviated from the child support guidelines because it found the obligor's spouse's contribution
to their joint living expenses would enable the obligor to pay more child support than if he were
solely responsible for his living expenses. Starck, 878 S.W.2d at 306. Reviewing the overall scheme
of calculating child support, the Thirteenth Court of Appeals held the Texas Family Code did not
expressly prohibit the trial court's consideration of spousal contribution to household expenses. 
However, the court of appeals opined,"[T]he legislature was attempting to design a neutral scheme
that would be unaffected by the remarriage of the child support obligor, either for the purpose of
increasing or decreasing child support." Id. Based on this conclusion, the Thirteenth Court held,
"Permitting the [trial] court to deviate from child support guidelines because the obligor's new
spouse contributes to their joint living expenses allows the court to do indirectly what the statute
directly prohibits." Id. The court then held the trial court erred by considering the degree to which
the obligor's spouse compensates for the obligor's share of household expenses.
            We agree with our sister court's general conclusion that the statutory method for calculating
child support was not designed to impose a duty on an obligor's spouse to support the obligor's
children using the income of the obligor's spouse. The Texas Family Code expressly forbids a trial
court from adding the resources of a new spouse to determine the amount of child support to be
ordered. Tex. Fam. Code Ann. § 156.404(a). 
            Pauline did not allege Jerry was underemployed. See Tex. Fam. Code Ann. § 154.066
(Vernon 2002) (intentional unemployment or underemployment are grounds for deviation from the
guidelines). Nor did she allege Jerry hid his business income by either diverting income to Jan or
by paying household expenses with business funds. Had Pauline alleged and proved fraud or
intentional underemployment, the trial court agreed, the trial court would have been statutorily
authorized to deviate from the child support guidelines. See id.; In re Davis, 30 S.W.3d 609, 616
(Tex. App.‒Texarkana 2000, no pet.). Such a finding, however, was not made by the trial court. 
Accordingly, the trial court was not justified in deviating from the guidelines.
            Having sustained Jerry's fourth point of error, we need not address the remaining issues. We
reverse the trial court's judgment and remand the case for further proceedings consistent with this
opinion.
 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 28, 2003
Date Decided:             October 15, 2003