169 S.W.3d 740 (2005)
In the Interest of J.R.D. and T.C.D.
No. 03-04-00311-CV.
Court of Appeals of Texas, Austin.
July 14, 2005.
*741 James A. Vaught, McCullar & Vaught, PC, Austin, for appellant.
Catherine A. Mauzy, Law Office of Catherine A. Mauzy, Christa Brown, Austin, for appellee.
Before Chief Justice LAW, Justices PATTERSON and PURYEAR.

OPINION
Opinion by Justice PATTERSON.
Roger Duck appeals from a modification order in a suit affecting the parent-child relationship. After a hearing, the district court entered an order granting the petition to increase Duck's time with his sons to include Thursday overnights but otherwise *742 denied a further increase in the possession schedule and a reduction in child support. On appeal, Duck challenges the court's failure to decrease child support and to grant further modification of the possession schedule, and the court's finding that it was not in the children's best interest to implement a 50-50 division of periods of possession. Because the evidence supports the district court's conclusion and because we cannot say that the court abused its discretion or otherwise committed error, we affirm the court's order.
Upon their divorce in June 2000, Roger Duck and Melanie Williamson were named joint managing conservators of their two sons, ages 6 and 3; Williamson was named as the parent with the right to establish the children's primary residence. The possession schedule and the amount of child support in the divorce decree were set by agreement. Apart from limited incidents, the parties agree that they are both good parents.
Because of financial difficulties, in 2002, Duck petitioned for modification of the amount of his child support obligation. Again, the parties reached an agreement and, in accordance with their agreement, the district court reduced his monthly child support from $1500 per month to $750 per month.
Although Duck's financial situation had not changed, he filed a second petition for modification in February 2003, seeking to reduce further the amount of his child support obligation. After Duck failed to pay the court-ordered amount of child support and advised Williamson that he would begin sending her $250 per month rather than the court-ordered amount, Williamson filed a motion to enforce, and Duck was found in contempt for failure to pay child support. He proposed that the children should spend alternate nights with him. Williamson rejected this "ping-pong" proposal because it would unduly disrupt the children's schedule. She would not agree to Duck's request for additional time and urged that he exercise the full amount of time set forth in the possession schedule of the original divorce decree. Duck then amended his petition seeking an increase in his periods of possession of the couple's sons to include overnights on Sundays, Mondays, and Thursdays.[1]
After a hearing on the petition to modify, the court entered an order modifying the possession schedule to allow Duck to keep the children overnight on Thursdays as permitted by an election under the standard possession schedule. The district court denied Duck's request for Sunday and Monday overnight possession and declined to order a change in Duck's child support obligation.
Under the applicable portions of section 156.101 of the Texas Family Code, the district court may modify the conservatorship of a child only if the modification is in the child's best interest, and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of rendition of the order. See Tex. Fam.Code Ann. § 156.101 (West Supp.2004-05). The party moving for modification has the burden of proving the occurrence of "material and substantial change." In re Knott, 118 S.W.3d 899, 902 (Tex.App.-Texarkana 2003, no pet.); In re P.D.M., 117 S.W.3d 453, 463 (Tex.App.-Fort Worth 2003, pet. denied).
We review the district court's modification order under an abuse of discretion *743 standard. We give wide latitude to a trial court's decision on custody, control, possession, child support, and visitation, and will reverse the order only if it appears from the record as a whole that the trial court abused its discretion. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982) (applying abuse of discretion standard with regard to possession order); In re C.P.J., 129 S.W.3d 573, 576 (Tex.App.-Dallas 2003, pet. denied). The trial court is in a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. Martinez v. Molinar, 953 S.W.2d 399, 403 (Tex.App.-El Paso 1997, no writ). Its judgment will not be disturbed on appeal unless there has been a clear abuse of discretion. Id.
A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules or principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990) (applying abuse of discretion standard with regard to child support order). The determination of conservatorship issues is guided by the best interest of the child and is "intensely fact driven." Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex.2002). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the district court abused its discretion. See, e.g., Norris v. Norris, 56 S.W.3d 333, 338 (Tex.App.-El Paso 2001, no pet.).
Duck raises constitutional and statutory challenges to the court's order. He contends that the court erred regarding the amount of his access to and possession of the children because he is constitutionally entitled to equal time with them. A constitutional analysis must begin with a presumption of the statute's validity. General Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.2001). The burden is on the party seeking to rebut the presumption of statutory validity. Id. As mandated by statute, the best interest of the child is the court's primary consideration in determining conservatorship and access. Tex. Fam.Code Ann. § 153.002 (West 2002). "Joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." Id. § 153.135 (West 2002). "The standard possession order . . . constitutes a presumptive minimum amount of time for possession of a child by a parent named as a joint managing conservator who is not awarded the exclusive right to designate the primary physical residence of the child in a suit." Id. § 153.137 (West Supp.2004-05). There is a rebuttable presumption that the standard visitation order provides reasonable minimum possession of a child for a parent named as a joint managing conservator and that such possession is in the best interest of the child. Id. § 153.252 (West 2002).
Although the court modified the possession schedule to allow Duck's children to stay overnight with him on Thursdays,[2] Duck also sought Sunday night possession, claiming that he has an "absolute right" to Sunday overnight stays by statute. See id. § 153.317 (West Supp.2004-05); see also In re Davis, 30 S.W.3d 609, 612 (Tex.App.-Texarkana 2000, no pet.). Duck, however, failed to justify his request for Sunday night possession by showing the court that his circumstances or those *744 of his children had materially and substantially changed since the rendition of the last modification order on April 19, 2002.[3] Tex. Fam.Code Ann. § 153.317; Davis, 30 S.W.3d at 612-13 (Sunday overnight stays justified by finding of substantial change that occurred in five years since entry of prior order). Thus, Duck did not have an "absolute right" to the Sunday overnight possession. Moreover, Duck agrees that the children have flourished under the current possession agreement.
The possession schedule in this case follows the standard possession schedule except that Duck is afforded additional possession time on Mondays from the time school dismisses until 8:00 p.m. and for Monday overnights in summer. This is a presumptively reasonable possession schedule that the district court found to be in the children's best interest. Id. § 153.252. We find sufficient evidentiary support for the balance the district court struck in modifying the standard order and find no support in the record for further altering the schedule.
Duck further lodges a constitutional challenge to the court's use of the best-interest-of-the-children standard, claiming that it interferes with his fundamental right to parent his children and does not serve a compelling state interest. It is clear from the record that, with minor lapses, both parents are and strive to be good and fit parents. From this, Duck argues that good parents should have substantially equal periods of possession with their children. After reviewing the record, we cannot locate any testimony by Duck that his proposal would be in the best interest of the children. Indeed, at one point the district court admonished Duck to focus on the interest of the children, rather than his own best interest. Duck responded that "the best interest of the children cannot be at the expense of my constitutional rights." While there is a statutory presumption that the parents be appointed joint managing conservators, there is no comparable statutory presumption that the award of equal periods of possession is in the children's best interest. Compare id. § 153.131(b) (West 2002) with id. § 153.135. Duck did not identify any case that found a constitutional infringement based on a court's order of unequal possession periods for divorced parents. Moreover, the Supreme Court has expressly recognized that the "best interest of the children" is the proper standard for resolving disputes between parents on custody issues. Reno v. Flores, 507 U.S. 292, 303-04, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); In re H.D.O., 580 S.W.2d 421, 424 (Tex.App.-Eastland 1979, no writ) (holding "best interest of the child" standard does not violate federal constitutional principles); see also In re R.D.Y., 51 S.W.3d 314, 324 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (mother not denied due process of law or equal protection of law based on court's finding that child's best interest weighed against mother's possession for overnight visitation).
Duck also contends that the district court abused its discretion by refusing to further reduce the amount of child support because Williamson had the same or similar financial resources as he did and a greater obligation had been imposed on him as a male and the father. Duck did not meet his statutory burden of demonstrating a reason for reducing his child support obligation. Nor is there anything *745 in the record to support his claim that the court arbitrarily imposed child support obligations upon him in violation of his constitutional rights as a parent. In 2002, Duck and Williamson agreed to an order reducing his monthly obligation to $750; he testified at the hearing that his income had not changed since that time. His testimony does not support deviation from the child support guidelines. See Tex. Fam.Code Ann. § 154.123(a) (West 2002). Nor does continuation of the $750 support set in his prior agreement constitute "gender discrimination" by the court. Because Duck's income has not changed since he agreed to the modification in 2002, the amount of child support being paid is well within the presumptively reasonable amount established by the Texas Family Code's guidelines, and he did not produce evidence justifying variance from the guidelines, we conclude that the district court did not rest its determination on any improper consideration and did not abuse its discretion in denying Duck's requested reduction.
After observing the parties and their witnesses, their demeanor, and the validity of their claims, the district court found that Duck had failed to carry his burden of proving a material and substantial change with respect to the possession schedule and child support. Both are well within statutory guidelines. Giving great deference to the district court's judgment and in light of the statutory provision expressly mandating that equal possession is not required, we would be hard pressed to conclude that the district court's ruling was made without reference to any guiding rules and principles.
Having overruled Duck's issues, we affirm the district court's order.
Concurring opinion by Justice
DAVID PURYEAR, Justice, concurring.
The majority apparently affirms the district court's decision that Duck failed to show "changed circumstances" so as to justify modification of the order.[1] Because I agree that the court did not err in its decision in that regard, I concur in the result reached by the majority. However, I write separately to express my belief that the standards currently used in making and reviewing orders that have the effect of limiting a parent's access to his or her children do not reflect the legislative mandate regarding parental access, nor do they adequately respect the scope of the liberty interest enjoyed by a parent in rearing his or her own children.
Because of the gravity of the constitutional rights and interests at stake in such proceedings, and because the current standard is based upon outdated notions of parenting that predate the family code and run counter to the legislature's stated policy concerning children's best interests, trial courts should justify deviation from maximum feasible time with both parents by clear and convincing evidence and make factual findings, and appellate courts should carefully review those findings.
The custody issue entertained by the court in this case is one faced by trial courts countless times every day. Yet, while the liberty interest at issue is "perhaps the oldest of the fundamental interests recognized," Troxel v. Granville, 530 *746 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the standards by which the trial courts decide and consequently, by which appellate courts review these decisions offer minimal recognition of the gravity of the liberty interests parents and children hold in their relationships and little protection to the individuals involved. Our trial courts operate under a preponderance of the evidence standard in these cases and appellate courts apply an abuse of discretion standard in reviewing those decisions. Thus, even against the background of these monumental rights and explicit legislative directives to limit a parent's time with a child only as necessary, see Tex. Fam.Code Ann. § 153.193 (West 2002), a trial court, if it were ever so slightly more persuaded in one direction than another, may make a decision profoundly affecting the rights and abilities of parents to raise their children, and unless we can say that no reasonable mind could have reached the court's conclusion, we leave it undisturbed. A parent's interest in the companionship, care, custody, and management of his or her children is paramount and demands a respect much greater than that due the liberties derived from mere "shifting economic arrangements." Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, in practice, issues of shifting economic arrangements often receive more protection. For instance, in a divorce, a party seeking to overcome the community property presumption must prove an item is separate property by the higher standard of clear and convincing evidence. Tex. Fam.Code Ann. § 3.003 (West 1998). Clear and convincing evidence is that measure or degree of proof that produces in the mind of a fact-finder a firm belief or conviction of the truth of the matter sought to be established. In re C.H., 89 S.W.3d 17, 23 (Tex.2002). Limitations on parental access to children, however, need not be supported by evidence upon which the fact-finder could form a firm belief or conviction. This standard is totally at odds with both the fundamental nature of the constitutional rights at issue and the legislature's stated policy and mandate.

Interests of parents and children and the State
The right to the companionship, care, custody, and control of one's own child is a fundamental liberty interest far more precious than any property right. In re M.S., 115 S.W.3d 534, 547-48 (Tex.2003) (citing Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Thus, "the relationship between parent and child is constitutionally protected." Troxel, 530 U.S. at 66, 120 S.Ct. 2054 (citing Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978)). Parents have the responsibility and the right to direct the upbringing and education of their children. Id. at 65, 120 S.Ct. 2054 (citing Pierce v. Society of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)). In fact, it is "cardinal" that the custody, care, and nurture of a child reside in the parents. Id. at 65, 120 S.Ct. 2054 (citing Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)). It has been firmly established that the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental rights of parents to make decisions concerning the care, custody, and control of their children. Id. at 66, 120 S.Ct. 2054. "[T]he Due Process Clause does not permit States to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a `better' decision could be made." Id. at 72-73, 120 S.Ct. 2054.
Children also have a substantial interest in the proceedings that determine their custody and the direction of their lives. *747 See M.S., 115 S.W.3d at 547. Both parent and child have a weighty interest in the accuracy and justice of a decision affecting their ability to have a relationship with one another. Id. (recognizing this substantial interest in context of termination of parental rights). The State also has an interest in protecting the welfare of its children, which "must initially manifest itself by working toward preserving the familial bond" between a parent and child unless that parent will not provide a safe, stable environment. Id. at 548.
While the grant of custody to another or the limitation of a parent's access to a child is not tantamount to absolute termination of parental rights, the State must tread very carefully when it infringes upon a parent's ability to participate in child rearing. See Troxel, 530 U.S. at 72-73, 120 S.Ct. 2054. Even when it does not terminate rights, a court that trenches on a parent's ability to rear his or her children may also violate the United States Constitution. Id. at 67, 120 S.Ct. 2054. Also, the Texas Supreme Court has recognized that custody determinations as between fit parents can risk a significant deprivation similar to termination of the relationship. See Lewelling v. Lewelling, 796 S.W.2d 164, 168 n. 8 (Tex.1990) ("[w]hile this may not. . . technically be a termination of parental rights action, it may have such an effect"; where mother without adequate transportation lives some distance from son, existence of visitation rights is likely to be insufficient to allow her "to have a substantial role in her child's upbringing"). The weighty interests of parents, children, and the State in a just and accurate decision mandate that "any significant risk of erroneous deprivation is unacceptable." M.S., 115 S.W.3d at 549 (emphasis added). Our government respects fit parents' abilities to act in the best interests of their children by applying a presumption that they do so. Troxel, 530 U.S. at 68, 120 S.Ct. 2054. The United States Supreme Court has recognized that, in accord with this presumption, so long as a parent is "fit," there is normally no reason for the State to inject itself between parent and child or disturb that parent's rearing of his or her children. Id. at 68-69, 120 S.Ct. 2054. In other words, court interference with the right of a fit parent to bring up his or her own child impacts a fundamental right and may violate the Due Process Clause.

The family code
The family code's statutory scheme focuses on the children's welfare and best interests. Tex. Fam.Code Ann. § 153.002 (2002) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."); M.S., 115 S.W.3d at 549; Lenz v. Lenz, 79 S.W.3d 10, 14 (Tex.2002) (reiterating legislature's mandate that best interest of child is primary consideration). Consistent with legislative mandate, Texas courts have recognized that it is in the best interest of children to have "maximum reasonable visitation" with parents. See Wood v. Wood, 510 S.W.2d 399, 400 (Tex.Civ.App.-Fort Worth 1974, no writ) (lamenting that divorced parents often allow their animosity towards one another to overshadow concern that children maintain healthy relationships with other parent, harming children whether resulting in constant conflict or gradual absence of one parent). The Wood court's terminology is an incident of its time; the current family code does not use the word "visitation," and courts have adopted the view that a parent's time of possession and access should not be considered "visiting with" that parent, but "living with" him or her. See Norris v. Norris, 56 S.W.3d 333, 335 n. 1, 345 (Tex.App.-El Paso 2001, no pet.) (recognizing meaningful distinction between *748 "visiting" and "parenting"). We should recognize that fit parents should be allowed not just to visit, but to parent their children.
Our legislature has pronounced its policy determination in all suits affecting the parent-child relationship:
(a) The public policy of this state is to:
(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
(2) provide a safe, stable, and nonviolent environment for the child; and
(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.
Tex. Fam.Code Ann. § 153.001(a) (West 2002). It is incumbent upon courts to follow such public policy imperatives in interpreting the family code. Lenz, 79 S.W.3d at 14 (reviewing policy and applying it to modification and relocation context).
The legislature has implemented this policy by directing courts that "[t]he terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." Tex. Fam.Code Ann. § 153.193 (West 2002) ("Minimal Restriction on Parent's Possession or Access") (emphasis added). In order to protect children's abilities to have a meaningful relationship with their parents, the legislature determined that the standard possession order would set a presumptive minimum amount of time for possession of a child by a joint managing conservator parent. Id. § 153.137 (West Supp.2004-05). In its instructions how to apply the "guidelines established in the standard possession order," the legislature repeated its characterization of the periods as the minimum guaranteed to a joint managing conservator. Id. § 153.251 (West 2002) (standard order is "intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator or as the minimum possession for a joint managing conservator") (emphasis added).
Sadly, in many cases, trial courts attempting to dispose of messy divorces as equitably and expeditiously as possible simply automatically adopt the minimum outlined in the standard possession order without considering whether that order will impose limits upon possession and access in excess of those necessary to protect the best interests of the children. The trial court's emphasis on the standard possession order in this case is illustrative. The court, in granting Duck's request for Thursday overnight stays, explained, "That's in the standard possession schedule and there's no reason why he can't make that election and have the standard schedule that every other dad gets." In denying the Sunday night overnight request, the court opined that the standard possession order was appropriate and that it did not include that night.[2] The court awarded fees to the mother, although she only partially prevailed, because she had to defend against Duck's unpersuasive Constitutional claims, saying "I think that really if dad had just wanted a Thursday overnight, pursuant to the standard schedule, that would have been hard for mom to resist," implying that, had Duck merely requested the statutory minimum, the court would not have awarded fees against *749 him.[3] The court appears to have inadvertently substituted the word "reasonable" where the legislature used "minimum" in section 153.137's direction for the proper application of the standard possession order. The family code does not envision limiting a parent's time with a child to what "every other dad gets."
Courts have a responsibility to do more than automatically adopt a standard minimum. Instead, in making and reviewing these decisions we need to recognize that the circumstances of each case will dictate different custody arrangements and that, for the children of Texas, one size does not fit all. Reading sections 153.193 (allowing only necessary limitations on parent's access), 153.137 (standard order presumptive minimum), and 153.251 (standard order sets minimum for joint managing conservators) together, it appears that, to comply with the family code, every court that imposes limitations on a parent's right to possession of or access to a child by adopting the standard possession order has made an express or implied finding of fact that that particular limitation on the parent's time with the child is required to protect the best interests of the child. The legislature has declared a presumption that it is in the child's best interest to have the minimum amount of time with any reasonably safe parent, and it makes no sense  nor is it authorized  to blindly apply that same minimum of time to a parent who is not merely safe but is an interested and active influence in his or her child's life without regard to the degree of emotional engagement or bonding between the parent and child. Whatever latitude courts have in setting possession periods, they do not have the discretion to automatically adopt the minimum and ignore the legislature's explicit directive in section 153.193 to allow maximum feasible time with both parents unless doing otherwise would impair the children's interests.

Standard of Proof and Standard of Review
The legislature has not articulated a standard by which appellate courts should review orders setting possession periods; because trial courts are the fact-finders who determine what is in the children's best interest, appellate courts have applied an abuse of discretion standard of review. See, e.g., Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982).[4] The discretion courts have in determining the factual issue of children's best interests, however, is not unfettered. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976) (non-exhaustively listing factors courts consider in determining whether termination of parental rights is in children's best interests); See also In re Jane Doe 2, 19 S.W.3d 278, 282 (Tex.2000) (applying non-exhaustive list of Holley factors "for determining a minor's best interests" to factual determination of best interest of minor in parental notification case). The supreme court recognized in Jane Doe 2 that a trial court should make explicit fact findings regarding a child's best interest in order to allow *750 meaningful appellate review. See Jane Doe 2, 19 S.W.3d at 282. Without such findings, it is impossible to meaningfully review any such decisions. Id.
Texas appellate courts' treatment of best interest determinations in the context of termination of parental rights is inconsistent with their treatment of the best interest determination trial courts are directed to make (and appellate courts must review) in custody and possession decisions. Termination findings, including the best interest finding, survive factual sufficiency challenges only if the following heightened standard is met; the evidence must be such that a reasonable fact finder could form a firm belief or conviction that the findings are correct. C.H., 89 S.W.3d at 18-19. They survive legal sufficiency challenges where, in examining the evidence in the light most favorable to the findings and disregarding evidence a reasonable fact finder could have disbelieved, the appellate court determines that a reasonable fact finder could have formed a firm belief or conviction that the findings are correct. In re J.F.C., 96 S.W.3d 256, 265-66 (Tex.2002). This heightened standard is appropriate because cases involving termination of parental rights require the findings to be based upon clear and convincing evidence. Id. at 264 (citing C.H., 89 S.W.3d at 25). Termination findings must be supported by clear and convincing evidence because termination of the parent-child relationship is a drastic remedy of such weight and gravity that due process requires the state to justify it by more substantial proof than a preponderance of the evidence. C.H., 89 S.W.3d at 23.
Although custody and possession determinations as between parents are not as permanent or drastic as termination of parental rights, those issues can severely limit the relationship and have the potential to profoundly impair the fundamental liberty interest of parents and children in the parent-child relationship.[5] Therefore, I would urge that the standard of proof in the trial court be re-examined. The standard of proof instructs the fact finder on the degree of confidence our society believes it should have in the correctness of factual conclusions for any given adjudication. Santosky, 455 U.S. at 754-55, 102 S.Ct. 1388 (citing Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). Thus, the standard reflects the weight and gravity of the interests affected and society's judgment about how the risk of error should be distributed. Id. at 755, 102 S.Ct. 1388. The United States Supreme Court "has mandated an intermediate standard of proof  `clear and convincing evidence'  when the individual interests at stake in a state proceeding are both `particularly important' and `more substantial than mere loss of money.'" Id. at 756, 102 S.Ct. 1388 (citing Addington, 441 U.S. at 424, 99 S.Ct. 1804). The Court deemed this level of certainty necessary to preserve fundamental fairness in a variety of proceedings that threaten the individual involved with a significant deprivation of liberty. Id. Whether the loss threatened by any given proceeding is sufficiently grave to warrant requiring a heightened level of certainty turns on the nature of the private interest and the permanency of the threatened loss. Id. at 758, 99 S.Ct. 1804. Where, as here, the threatened loss is compelling, increasing the burden of proof is a way to impress the fact finder with the gravity of the decision. See id. at 764-65, 99 S.Ct. 1804.
*751 The current court-created standard allows a trial court holding severely curtailing parental rights to stand so long as there is some evidence upon which to base its findings and an appellant does not show that the court failed to follow any guiding rules or principles. This standard is inconsistent with the Constitutional nature and weighty import of the rights at issue. See Troxel, 530 U.S. at 72-73, 120 S.Ct. 2054 (fundamental right of parents to rear children cannot be infringed simply because state court has decided it would be better for children). It presents a significant risk of erroneous deprivation of the most sacred of liberty interests of parents and children. See id. at 73, 120 S.Ct. 2054 (citing Pierce, 268 U.S. at 534-35, 45 S.Ct. 571, which holds special liberty interest of parents includes right to direct upbringing of children); M.S., 115 S.W.3d at 549 (significant risk of deprivation unacceptable).
It also falls far short of showing proper respect to the legislature's deliberate policy decisions commanding Texas courts to support and cultivate relationships between children and their parents so long as those parents are fit and to implement maximum parent-child contact to actively preserve family relationships often made all too fragile by parents' inabilities to set aside personal animosity long enough to recognize their children's need for their other parent. The current standards predate such policy determinations and thus, unsurprisingly, fails to take them into account. In Gillespie, the supreme court recited the abuse of discretion standard and supported it by reference to Leithold v. Plass, 413 S.W.2d 698, 700 (Tex.1967), and former Texas Family Code sections 14.01 and 14.05. See Gillespie, 644 S.W.2d at 451. However, "Leithold is based entirely on common, judge-made law. It preceded the enactment of the Family Code, specifically section 153.131, which makes joint custody the public policy of this state." Dennis v. Smith, 962 S.W.2d 67, 69 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). Leithold, along with the standard it has propagated, is a relic of another time; it distinguished between a change in custody and a change in visitation, concepts the family code no longer favors, by reference to the superior rights one parent enjoyed over the other, which is "a fundamental difference" from the current family code policy favoring joint managing conservatorship. See Dennis, 962 S.W.2d at 69 (also noting Leithold dissent's antiquated condemnation of "evil" of "split custody," apparently born from context in which "the law then endorsed sex discrimination in favor of women, giving them preference in child custody cases," and contrasting current norms embodied in joint managing conservator statute designed to undo that very construct). The differences between the current and original family code provisions similarly show that the old standard is no longer appropriate. Former chapter 14, governing conservatorship, possession, and access, envisioned appointment of a managing conservator, preferably a parent, essentially giving the trial court the choice between two possible conservators, a choice that was difficult for appellate courts to second-guess. See Act of May 25, 1973, 63d Leg., R.S., ch. 543, 1973 Tex. Gen. Laws 1411, 1422-26, repealed Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282. Current family code chapter 153, governing conservatorship, possession, and access, no longer leaves that broad choice to the trial court; it has effectively chosen both parents as the children's conservators by providing for joint managing conservatorship, Tex. Fam.Code Ann. § 153.005 (West 2002), articulating the policy that parents should share in the rights and duties of child rearing and have frequent, continuing contact with the child, id. § 153.001, and mandating only minimal restriction on either *752 parent's possession or access, id. § 153.193. Under former chapter 14, which contained ten sections, trial courts had broad discretion to determine and effectuate children's best interests. In current chapter 153, containing some sixty sections, in contrast, the legislature has specified and articulated preferences and guidance for courts making conservatorship and possession determinations. In short, the context that gave rise to the abuse of discretion standard of review in these cases  a court having to apply presumptions in favor of one or the other parent and decide what is in a child's best interest based entirely upon the parties' credibility and other facts before it  no longer exists. Today's courts have guidance and responsibilities beyond those existing forty years ago, yet our persistence in applying a lesser standard still allows our judicial system to gloss over the legislature's directives and affirm a trial court's authority to rule on the barest of evidence if any reasonable mind could have reached the same conclusion.
Despite the United States Supreme Court's determination to subject infringement upon such fundamental rights to strict scrutiny and of our own legislature's mandate to preserve and foster parent-child relationships, Texas courts have developed a jurisprudence under which trial court decisions severely curtailing that relationship stand absent an abuse of discretion. See Gillespie, 644 S.W.2d at 451. Considering the importance of and the risk to the rights at issue and the legislature's clear mandates that courts take measures to protect this most sacred of relationships, I believe we need to carefully re-examine the standards by which decisions that limit a parent's access to or possession of a child are made and reviewed.
NOTES
[1] Duck previously had Monday and Thursday evenings with his sons until 8:30 p.m. and Sunday evenings on his weekends until 6:00 p.m.
[2] Because Williamson does not complain about the court's grant of Thursday night possession to Duck or whether a material and substantial change in circumstances justified such a modification, we do not address this issue.
[3] The court signed an order granting Duck's petition to modify in suit affecting the parent-child relationship on April 19, 2002. Less than a year later, on February 4, 2003, Duck again filed for modification. His amended petition of December 4, 2003, was the live pleading at the time of the hearing on December 18, 2003.
[1] Interestingly, despite the trial court's express finding that there were no changed circumstances justifying a modification in the order, the court granted Duck's request for modification of the possession order concerning Thursday nights. As Williamson does not appeal the grant of overnight possession on Thursdays, the majority opinion does not address this apparent inconsistency.
[2] But see Tex. Fam.Code Ann. § 153.317 (West Supp.2004-05) (extending evening periods including Sundays to the time school begins the following day).
[3] Also, the court repeatedly expressed concern that, because the children were thriving under the current order, it would be better to leave the schedule unchanged rather than risk disrupting the children. The idea that more time with a fit parent who is actively engaged in a child's life is potentially a risk or detrimental to a child runs counter to stated legislative policy favoring parental involvement in children's lives.
[4] Under the abuse of discretion standard, we defer to the trial court's findings because the trial court "is in the best position to observe the demeanor and personalities of the witnesses and can `feel' the forces, powers, and influences that cannot be discerned" from reading a cold record. Norris v. Norris, 56 S.W.3d 333, 338 (Tex.App.-El Paso 2001, no pet.).
[5] For instance, the standard possession order completely subjects a parent's right to have any contact with her child to the discretion of the other parent during periods during which the child is in the other parent's possession, often for days or weeks at a time.