

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00001-CV

_____

IN THE INTEREST OF W.C.R. AND I.S.R., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 10D0452-CCL

Before Morriss, C.J., Moseley and Carter*, JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

Sam E. Reed failed in his efforts to convince the trial court to reduce his child support payments to Mary A. Reed for W.C.R. and I.S.R.[1] Sam appeals, contending that (1) the trial court erred in deviating from the child support guidelines listed in the Texas Family Code and (2) the trial court abused its discretion in concluding that Sam failed to meet his burden to demonstrate that a substantial and material change in his financial situation required a lower child-support payment. Finding no abuse of discretion, we affirm the trial court's judgment.

Mary and Sam had two children at the time of their divorce in 2010. Pursuant to their agreed final decree of divorce, the trial court ordered Sam, a commercial real estate broker, to pay $1,600.00 per month in child support, plus twenty-five percent of his gross sales commissions.

In 2013, after Sam had accrued a $38,319.49 arrearage on his child support obligation, he sought to modify the parent-child relationship, requesting, among other things, a reduction of his existing child support obligation. As a result of a September 26, 2013, hearing, the trial court granted a judgment against Sam in favor of the Attorney General in the amount of the arrearage and ordered Sam to pay the added sum of $500.00 per month in order to satisfy the arrearage.[2]

---

[1]To safeguard the privacy of the minors involved, this opinion uses pseudonyms for the parents, initials for the minor children, and initials in referring to business entities involved in the analysis.

[2]During this September hearing, Sam claimed that he had paid Mary $33,000.00 in cash.

A few months later, Sam sought to modify the order,[3] (1) arguing that there had been a material and substantial change in his financial status since the September 2013 hearing,[4] and (2) again requesting that the court lower his child support obligation. In response, Mary asked the trial court to enforce Sam's child support obligation by finding him in contempt under the previous order. After a hearing, the trial court denied Sam's request to lower his child support obligation, readjusted the arrearage to add $4,900.00 in additional missed payments, and entered judgment in favor of Mary in that amount. Sam appeals.

A trial court may modify an order to pay child support if there has been a material and substantial change in the circumstances of a person affected by the order since the date of the order. TEX. FAM. CODE ANN. § 156.401(a)(1) (West 2014). "The movant has the burden to show a requisite change in circumstances has occurred since the entry of either the last modification or the original divorce decree, whichever is more recent." *In re Knott*, 118 S.W.3d 899, 902 (Tex. App.—Texarkana 2003, no pet.).

"The trial court is given broad discretion in setting child support payments and in modifying those payments." *In re K.R.L.*, No. 06-09-00010-CV, 2009 WL 1748965, at *2 (Tex. App.—Texarkana June 23, 2009, no pet.) (mem. op.). An appellate court should not disturb a child-support order unless a clear abuse of discretion is shown. *Knott*, 118 S.W.3d at 902; *see K.R.L.*, 2009 WL 1748965, at *1 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

---

[3]The trial court's docket sheet reflects that September 26, 2013, was the date of the initial modification hearing. The resulting order was not signed until November 21, 2013.

[4]In his appellate brief, Sam argues that there was a "material and substantial change in [his] income since child support was ordered in the original decree of divorce." Yet, the issue is whether Sam's circumstances had materially and substantially changed since the November 21, 2013, order.

An abuse of discretion occurs when a trial court rules "without reference to any guiding rules and principles." *Knott*, 118 S.W.3d at 902 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

When reviewing a child-support ruling for an abuse of discretion, factual and legal sufficiency of the evidence constitute just part of the abuse-of-discretion review. *In re Tucker*, 96 S.W.3d 662, 664–65 (Tex. App.—Texarkana 2003, no pet.). In our analysis, we look at the evidence "in the light most favorable to the trial court's actions and indulge every legal presumption in favor of the judgment." *Id.* at 665; *see In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied). "If some probative and substantive evidence supports the order, there is no abuse of discretion." *In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.). Since there are no findings of fact or conclusions of law, the trial court's order "must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *In re Naylor*, 160 S.W.3d 292, 294 (Tex. App.—Texarkana 2005, pet. denied) (citing *Worford*, 801 S.W.2d at 109); *see J.D.D.*, 242 S.W.3d at 920. Because "no findings of fact or conclusions of law were requested or filed," "[it] is therefore implied the trial court made all the findings necessary to support its judgment." *Id.* (citing *Worford*, 801 S.W.2d at 189).

Child-support guidelines are to guide trial courts in setting child support in light of other factors. *Stocker v. Magera*, 807 S.W.2d 753, 755 (Tex. App.—Texarkana 1990, writ denied); *see* TEX. FAM. CODE ANN. § 156.402 (West 2014). Some of the factors to consider in determining the amount of child support include income from self-employment, interest, dividends, and capital gains. TEX. FAM. CODE ANN. §§ 154.062(b)(2), 154.065 (West 2014). In cases such as the one

4

before this Court, in which a modification is sought, the trial court has quite wide discretion in making its ruling. *See* TEX. FAM. CODE ANN. § 156.402 ("court *may* consider . . . guidelines"; "court *may* modify"; "court *may* consider other relevant evidence in addition to . . . the guidelines.") (emphasis added). Here, evidence obtained at the modification hearing provided probative and substantive evidence to support the trial court's order.

At the hearing, Sam testified that he is a self-employed commercial real estate broker with T.L.G., L.L.C.[5] Sam's 2013 tax return reflected an adjusted gross income of $97,530.00,[6] which was comprised of (1) $14,432.00 in income generated from the sale of a 2012 Range Rover and (2) $83,098.00 in income generated from business entities, as set forth in the chart below.

| Name of Business Entity | Sam's Interest | Income or Loss Reported in 2013 |
|---|---|---|
| D.T., LLC | fifty-percent partnership interest | $11,804.00 in Passive Income |
| SAP H., LLC | fifty-percent partnership interest | $13,755.00 in Passive Income |
| R.L., LLC | one-third partnership interest | $31,660.00 in Passive Income |
| 5108 H., LLC | twenty-five percent shareholder interest | $6,726.00 in Passive Income |
| 5108 B., LLC, (d/b/a V.L.) | twenty-five percent partnership interest | $20,498.00 in Non-passive Income |
| A.T.B., LLC | twenty-five percent partnership interest | $29,160.00 in Non-passive Income less a $1,017.00 "Section 179 Deduction" |
| T.L.G., LLC | Unknown interest | $1,939.00 in Non-passive Loss |
| UPE | Unknown interest | $27,549.00 in Non-passive Loss |

---

[5]Consistent with an earlier footnote, above, initials of the business referred to here are used instead of the full name of the business entity, and other business entities are similarly referenced below, because of privacy concerns for the minor children involved and because the precise name of any such entity is not critical to the analysis in this opinion.

[6]Sam's 2012 tax return showed an adjusted gross income of $19,653.00.

5

In support of his motion for reduction of his child support obligation, Sam testified that two liquor stores in which he had an interest had lost business as a result of competition in neighboring cities that once prohibited the sale of alcohol. According to Sam, at the time that his original child support obligation was determined, he was making approximately $5,500.00 per month, but his income had since dropped to an estimated $2,200.00 per month. Sam explained that he currently received $1,200.00 per month, $650.00 per month, and $340.00 per month from three of the business entities. He stated that he no longer received any income from either of the two liquor stores.[7] Sam testified that, even though his 2013 tax return showed an adjusted gross income of $97,530.00, he did not receive that money because "the entities are having to pay the ... notes off that they owe." This testimony prompted considerable discussion about Sam's alleged failure to turn over the financial records related to these businesses.[8]

Mary, who did not receive child support from August to December 2014, testified that she did not believe Sam was truthful in his disclosure of available financial resources. Mary testified that information derived from one personal bank account that Sam did disclose demonstrated that $102,000.00 had been deposited into that bank account in a period of one year. The account also reflected transfers made into another personal checking account that was not produced during

[7]Sam also testified that he had spent about $900.00 in dues, uniforms, camp fees, and shoes for the children's involvement in extracurricular activities.

[8]Sam also admitted that his response was incorrect to discovery that asked where D.T., one of the businesses, maintained its business bank account.

6

discovery, as well as vacation expenses from San Francisco, California, and Hot Springs, Arkansas, that were incurred after Sam had filed his request to lower child support payments.

During cross-examination, Sam admitted that, as a result of his interest in these various business entities, he had a say in what distributions would be made by the entities. Although he stated that he made no income from A.T.B., one of the liquor stores, a November 2014 profit and loss statement from this business showed that one of its expenses was a "guaranteed payment" to Sam of $18,600.00. This profit and loss statement reflected a gross profit of $13,348.83 for the month of November 2014 and total profit of $163,596.21 for the January–November time period. Yet, although A.T.B. had a net income of $1,335.93 for November, it recorded a net loss of $13,277.28 at the year-to-date mark. The October 2014, profit and loss statement from V.L., the other liquor store, demonstrated that the business was profitable. It showed a total gross profit of $30,567.00 for October and $282,720.05 for the January–October time period. V.L. recorded a net income of $3,019.00 for October and $15,724.62 at the year-to-date mark. One of V.L.'s yearly expenses was listed as a "guaranteed payment" in the amount of $11,400.00, although the profit and loss statement did not clarify the recipient of the payment. Sam stated that four of the business entities owned property and that his interest in these various entities had value. Although Sam testified that he made, on average, $340.00 per month from his endeavors with the business D.T., he received $1,500.00 from the business in July 2014 and $750.00 in August and September 2014.

Sam had additional property that the trial court took into consideration in deciding not to lower the child support payment. The trial court "must also consider such factors as whether the

obligor or obligee has an automobile, housing, or other benefits furnished by another person." *In re Marriage of Grossnickle*, 115 S.W.3d 238, 246 (Tex. App.—Texarkana 2003, no pet.) (citing TEX. FAM. CODE ANN. § 154.123 (West 2014)); *see Stocker*, 807 S.W.2d at 755 n.3 ("The Supreme Court's Child Support Guidelines permit a court to consider the earning potential of a voluntarily unemployed or underemployed parent."). When asked how he planned to pay the arrearage, Sam testified, "I'm in the process of putting my house on the market to pay off that debt." Sam estimated that his home was valued at approximately $300,000.00.[9] Sam also owned an automobile.[10]

Additionally, Mary argued that Sam was intentionally underemployed. Both intentional unemployment and underemployment are grounds for deviation from the guidelines. TEX. FAM. CODE ANN. § 154.066(a) (West 2014). Sam testified that he is a commercial real estate broker with fourteen years' experience in the business. He also has a bachelor's degree in accounting and marketing. He worked Monday through Friday, but admitted that he went home around 2:30 p.m. on some days. Although he was able to sell real estate, Sam testified that he made nothing in sales

---

[9]Sam had valued the home at $311,600.00 in 2012. We note that Sam's brief makes mention of the fact that this home was awarded to him in the divorce decree and that he was required to pay Mary $147,000.00 "for her part of the equity in the home." In his brief (written by an attorney who is now married to Sam and undoubtedly has intimate knowledge of the facts involving this appeal), Sam claims that he "had to take out a loan" to pay this amount to Mary. The record does not support the contention that Sam was required to take out any loan. We disregard alleged facts not supported by the record.

[10]On his 2012 tax return, Sam listed a $70,013.00 Range Rover as property placed in service during the tax year that was "used more than 50% in a qualified business use." The 2013 tax return demonstrated that Sam sold this Range Rover. In his brief, Sam claims that the "Range Rover was then sold back to the dealership because [Sam] was no longer able to afford such vehicle." Sam's claim is unsupported by the record. The 2013 tax return shows that the gross sale price for the vehicle was $57.000.00, that the claimed depreciation was $23,944.00, the cost basis was $66,512.00, and the reported gain totaled $14,432.00.

8

commissions. Sam stated that he had not searched for supplemental employment and that he possessed the ability to make $97,500.00 per year "[o]n a good year."

Sam bore the burden to demonstrate a substantial and material change in his financial resources since the entry of the last modification. On this record, the trial court could have found that Sam failed to meet his burden. Further, the trial court was within its discretion to find (1) that Sam had the financial resources to make the ordered child support payments or (2) that Sam was intentionally underemployed and would be able to meet his child support obligation were he fully employed. We find that Sam has failed to demonstrate that the trial court clearly abused its discretion in denying his request for lower child support payments. Consequently, we overrule his point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:    June 3, 2015
Date Decided:      July 1, 2015

9