**Raymond STARCK, Appellant,**

v.

**Crystal NELSON, Appellee.**

**No. 13–92–374–CV.**

Court of Appeals of Texas, Corpus Christi.

May 26, 1994.

---

**304**

Karen S. Guerra, Guerra & Guerra, McAllen, for appellant.

Susan Williams, McAllen, W. Kelly Lange, Asst. Atty. Gen., Edinburg, Tod L. Adamson, Asst. Atty. Gen., Child Support Enforcement, Will Pryor, First Asst. Atty. Gen., Dan Morales, Atty. Gen., Mary F. Keller, Deputy Asst. Atty. Gen., Samuel T. Jackson, Chief, Child Support Litigation Div., Austin, for appellee.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION ON MOTION
## FOR REHEARING

DORSEY, Justice.

We withdraw our prior opinion and issue this in its stead. Raymond Starck appeals from a child support judgment which reduced his child support obligations for a year, then automatically increased support, ordered monthly payments of arrearage, and made a number of findings of fact to support the order.[1] By twelve points of error appellant complains that the trial court erred in setting child support because: the court considered the income of Starck's current wife in violation of the Family Code; the order violates the child support guidelines; the automatic increase in support impermissibly altered the burden of proof. Additionally, Starck complains that the court's findings of fact regard-

---

1. Starck does not appeal from the portion of the order setting his child support at $300 per month, nor does he appeal from the portion of the order setting $40 monthly to be paid for health insurance which increased to $75 monthly on February 1, 1993.

ing his net resources, intentional underemployment, earning capacity, and ability to repay arrearages are against the great weight and preponderance of the evidence. Appellant also claims that the court abused its discretion in ordering the automatic increase and in ordering repayment of the arrearages at $200 monthly, and that the orders are not in the best interest of the children.

Crystal Nelson and Raymond Starck were divorced in August 1986. Nelson was awarded managing conservatorship. Starck was named possessory conservator and ordered to pay $600 monthly child support for their two children. At the time of the divorce, Starck worked as a mall manager earning approximately $40,000 annually.

Starck filed a motion to modify child support in September 1987 after he was fired from his job and remained unemployed for a period. That motion resulted in an agreed order dated February 23, 1988 which reduced his child support obligation to $300 monthly for both children for three months. The order also provided that Starck would pay Nelson $80 monthly for health insurance.

In August 1991, the Attorney General filed a motion for enforcement against Starck for back child support which Nelson joined. Starck filed a motion to modify as a counterclaim. The motions were heard by a Master who entered an order lowering the child support for a year to $300 and then automatically increasing support to the previous levels; the order provided for arrearages to be paid at $100 monthly. Both parties appealed to district court. On February 27, 1992, the district court held a hearing and entered the order from which this appeal was taken.

The district court order contained the same child support provisions. Additionally, Starck was ordered to reimburse Nelson $40 monthly for the cost of health insurance through January 31, 1993, increasing to $75 monthly on February 1, 1993. The court also ordered Starck to pay arrearages of $200 monthly.

The basis for Starck's original motion to modify support was a change in his employment status; the current motion to modify is also based on a change in his employment status.[2] At the time of the divorce in 1986, Starck was earning approximately $40,000 annually. At the time of the 1988 temporary reduction order, the parties anticipated that he would be able to do so again. In 1990, Starck's gross earning were $46,879.62. In 1991, Starck's earnings totalled $19,766.12, before reduction of his self-employment business expenses. During part of 1991 Starck worked as a mall manager; for the remainder he worked as a commission-only health insurance salesman. At the time Starck filed his motion to modify he had been a commission-only salesman for several months; at the time of the district court hearing, Starck had been terminated by his health insurance carrier but had accepted new employment also on a commission-only basis.

Starck's first point of error claims that the trial court erred because it considered Starck's wife's income. Section 14.-056(c) of the Family Code[3] provides that "A court may not add any portion of the net resources of a new spouse to the net resources of an obligor or obligee in order to calculate the amount of child support to be ordered on a motion to modify." In fact, the court did not use Starck's wife's income to

---

2. Starck's employment history is as follows:

9/87    terminated from mall manager position

4/88    became employed as a manager of commercial real estate portfolio Alamo Savings and Loan

3/88    Resolution Trust Corp. took over Alamo Savings

3/88    employed by International Property Management supervising commercial real estate portfolio for Alamo Savings and the RTC

7/90    Accepted employment in San Antonio as mall manager

3/91    Involuntarily terminated as mall manager

4/91    drew unemployment compensation at the rate of $224 weekly from 3/15–4/24

4/91    Accepted position as health insurance commission salesman

2/92    Involuntarily terminated by health insurer effective 2/10

2/92    2/24 or 25 accepted commission sales position with Mutual of Omaha.

3. Unless otherwise noted, all references are to TEX.FAM.CODE ANN. (Vernon 1986 & Vernon Supp. 1994).

calculate Starck's net resources; however, the court considered Starck's remarriage in deviating from child support guidelines. The trial court found that Starck's wife's contribution to their joint living expenses enabled Starck to pay more child support than if he were solely responsible for his living expenses.

■ The precise language of the statute does not prohibit the trial court's action in this case. No reported cases interpret the boundaries of this statutory prohibition. The language of § 14.056(c), and the definition of net resources in § 14.053(b)[4] indicate that the legislature was attempting to design a neutral scheme that would be unaffected by the remarriage of the child support obligor, either for the purpose of increasing or decreasing child support.[5] The Code permits consideration of additional factors in § 14.-053(e)[6] and provides a list of evidentiary factors in § 14.054 which allow the court to set child support either within or outside the range recommended if relevant factors, other than the guidelines, justify a variance; the list of factors is extensive, but not exclusive. In reading the three Code sections together, the legislature has set forth what the court *must* consider (the definition of net resources), what the court *may* consider (the evidentiary and additional factors), and what the court *may not* consider (the new spouse's contribution). All three provisions should be read together and construed harmoniously if possible. Tex.Gov.Code Ann. §§ 311.002,

311.026(a) (Vernon 1985); *Petta v. State,* 840 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1992, pet. ref'd). Permitting the court to deviate from child support guidelines because the obligor's new spouse contributes to their joint living expenses allows the court to do *indirectly* what the statute *directly* prohibits. We sustain point one.

■ By point two, appellant complains that the trial court erred by entering a child support order that deviates from child support guidelines without making the necessary findings that the application of the child support guidelines would be unjust or inappropriate as required by § 14.057(b).[7] Appellant contends that the court's failure to do so should void the increase to $600 monthly child support. Appellant filed numerous proposed findings of fact and complained of numerous others. He never brought the absence of § 14.057(b) required findings to the trial court's attention. Although the statute requires the court to make such a finding without requiring the procedures set out in Rules 296–299,[8] we hold that appellant's failure to bring that requirement to the court's attention constitutes a waiver of that complaint. *Thompson v. Thompson,* 827 S.W.2d 563, 568 (Tex.App.—Corpus Christi 1992, writ denied). We overrule point two.

■ Point four complains that the court's finding that Starck's net resources would be at least $970 in February 1993 is

---

4. Net resources includes 100% of all wage and salary income and other compensation for personal services, interest, dividends, royalty income, self-employment income, net rental income, and all other income actually being received including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits, unemployment benefits, disability and worker's compensation benefits, interest income from notes, and/or accounts receivable regardless of the source, gifts and prizes, spousal maintenance, and alimony, less 100% of social security taxes, federal income taxes withholding for a single person claiming one personal exemption and the standard deduction, union dues, and expenses for health insurance coverage for the obligor's child. *Id.*

5. "[A] court may not subtract the needs of a new spouse or of a dependent of a new spouse from the net resources of the obligor or obligee." § 14.056(c).

6. "The court may consider any additional factors that increase or decrease the ability of the obligor to make child support payments." *Id.* After this statement, the section discusses non-income producing assets, potential sale of assets, and limits its discussion to property and assets.

7. In any suit affecting the parent-child relationship ...

in which the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines ... the court shall find that the application of the child support guidelines would be unjust or inappropriate....

§ 14.057(b). This portion of the statute was added in the 1991 amendments to the code.

8. Tex R.Civ.P. 296–299.

not supported by the evidence or is against the great weight and preponderance of the evidence. A trial court's findings of facts are reviewable on appeal for both legal and factual sufficiency by the same standards we apply in reviewing jury answers. *Blanco v. Garcia,* 767 S.W.2d 896, 897 (Tex.App.—Corpus Christi 1989, no writ). In determining legal sufficiency we consider only the evidence and inferences supporting the findings and disregard all contrary evidence and inferences. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). We uphold the finding if any evidence of probative force exists. *Id.; Blanco,* 767 S.W.2d at 897.

The evidence supporting the finding consists of Starck's earnings in prior years. At the time of the hearing, in February 1992, Starck had recently been discharged from his most recent employer and had accepted, but not yet started, a new commission-only sales position. The court is permitted to consider the earning potential of the obligor if the obligor is intentionally unemployed or underemployed. As this point is separately raised, we address it under point five. There is no direct evidence of Starck's earnings for February 1992, February 1993 or thereafter. Although the court is entitled to consider an obligor's past earning history, given Starck's erratic employment history in the two years preceding the hearing, we find the evidence to be so slight as to be no more than a scintilla.[9] On this record, we find there is no evidence to support a finding of at least $970 monthly net resources. We sustain point four.

▪ By point five, appellant attacks the legal and factual sufficiency to support the court's finding that appellant is intentionally underemployed. The Family Code permits a finding that an obligor is intentionally

underemployed and if such a finding is made permits the court to assess child support based on earning potential. § 14.053(f). The Code does not define intentional underemployment,[10] however, intentional underemployment must require a voluntary choice by the obligor. In this case, there is no evidence that Starck voluntarily changed jobs to accept a position that paid less. The undisputed testimony is that he has been involuntarily terminated from three positions and that since 1986 he has voluntarily left only one position. The single, voluntary job change was to accept a position in mall management. There is no evidence to support a finding of intentional underemployment. Point five is sustained.

▪ By points three and nine, appellant complains of the portion of the award which increases his child support from $300 monthly to $600 monthly on February 1, 1993. The Family Code contains no statutory authority for an automatic increase in child support obligations. Instead, the Code requires that for a child support order to be modified, a court must find a material and substantial change in condition which warrants a change from the prior order; the burden is on the movant seeking the change. § 14.08(c)(2).

▪ In this case, Starck was seeking a downward modification of an original award of support as a counterclaim to the enforcement suit brought by the Attorney General. Starck had the burden to show a material and substantial change in condition since the order of February 1988. Ordinarily, a reviewing court will look only at the evidence of a material and substantial change in condition that occurs between the date of the order sought to be modified and the date of the motion to modify. *Blanco,* 767 S.W.2d at 897. However, since the modification in 1988

9. This situation is markedly distinct from that where the obligor has a work history in a given field and although he has changed jobs, it is within his field so that income can be predicted with some certainty.

10. Cases pre-dating § 14.053(f) recognize voluntary unemployment and underemployment. Those cases seem to require an intent to avoid or reduce child support as a motivating factor in the obligor's voluntary job change or rejection of suitable employment. *See LeBlanc v. LeBlanc,*

761 S.W.2d 450, 454 (Tex.App.—Corpus Christi 1988), *writ denied per curiam,* 778 S.W.2d 865 (Tex.1989); *Powell v. Powell,* 721 S.W.2d 394, 395 (Tex.App.—Corpus Christi 1986, no writ); *Casterline v. Burden,* 560 S.W.2d 499, 501 (Tex. Civ.App.—Corpus Christi 1977, no writ); *Anderson v. Anderson,* 503 S.W.2d 124, 126 (Tex. Civ.App.—Corpus Christi 1973, no writ); *McSween v. McSween,* 472 S.W.2d 307, 310 (Tex. Civ.App.—San Antonio 1971, no writ).

was, by definition, temporary, we will consider all the events since the divorce in 1986. *See id.*[11] A trial court has considerable discretion in setting the amount of child support. A trial court's order setting child support will not be disturbed on appeal unless the complaining party shows a clear abuse of discretion. *Sohocki v. Sohocki*, 730 S.W.2d 30, 31 (Tex.App.—Corpus Christi 1987, no writ). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

Courts have generally rejected automatic increases in child support unless the increase was supported by evidence showing a certain future event to trigger the change. *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 886 (Tex.App.—Houston [1st Dist.] 1988, no writ) (no evidence of material and substantial change in expenses of children to support automatic increase in child support); *Abrams v. Abrams*, 713 S.W.2d 195, 196 (Tex.App.—Corpus Christi 1986, no writ) (automatic increases in child support improper absent sufficient evidence showing anticipated future needs of children); *In re J.M. and G.M.*, 585 S.W.2d 854, 859 (Tex.Civ.App.—San Antonio 1979, no writ) (agreement in divorce decree for automatic increases in child support unenforceable because not based on children's needs).

■ Temporary slumps do not rise to the level of a material and substantial change in condition and should not support a permanent change in child support levels. *See Blanco*, 767 S.W.2d at 898;[12] *Watkins v. Austin*, 590 S.W.2d 830, 832 (Tex.Civ.App.—Dallas 1979, no writ).[13] Starck met his burden to show a material . and substantial change in condition. This change in condition resulted in the trial court reducing his child support obligations to $300 monthly plus $40 monthly for health insurance. On

February 27, 1992, the date of the current order, Starck had started a new position selling life and health insurance. Neither he nor anyone else could foresee what his future self-employment income would be. His most recent employment had not been as lucrative as his prior employment; there is no indication that Starck would ever be able to obtain a mall management or a property management position. In scheduling an automatic increase, the court assumed a material and substantial change in condition would occur in the future. That assumption is not supported either by evidence of unusual expenses to be incurred by the children beginning on that date, by a certain increase in Starck's income, or by evidence of intentional underemployment which would permit the court to disregard the child support guidelines. The court abused its discretion in entering the order automatically increasing child support payments. We sustain points three and nine. We reform the order of child support to delete the automatic increase in child support payments on February 1, 1993 to $600.

■ Points of error ten and eleven complain that the trial court's finding that repayment of child support arrearages at the rate of $200 monthly would cause no undue hardship is against the great weight and preponderance of the evidence and is an abuse of discretion. The amount of arrearage to be paid each month is determined by the court and is subject to review for an abuse of discretion. *Tamez v. Tamez*, 822 S.W.2d 688, 692 (Tex.App.—Corpus Christi 1991, writ denied).

At the time of this hearing, the Code contemplated that arrearages be handled through income withholding orders and that up to 50% of the disposable earnings of the obligor be withheld for child support and arrearage payments. §§ 14.41 & 14.43. The

---

**11.** The *Blanco* court looked at the prior orders and found that they continued the level of support ordered initially. This court then considered all the circumstances from the date of the divorce through the hearing.

**12.** Holding that the duration of the obligor's decreased income supported the court's finding of

a material and substantial change in condition. *Id.*

**13.** Finding that the obligor's seven month steady decline in income without any offsetting change in the obligor's other financial circumstances was sufficient to show a material and substantial change in condition. *Id.*

current provision requires withholding. "The court shall order that a reasonable amount of income be withheld from the disposable earnings of the obligor to be applied towards the liquidation of any child support arrearages...." § 14.41(a). Disposable earnings are different and usually less than net resources.[14] The stated goal is to discharge arrearages in as short a time as possible—within two years if possible. However, the Code also permits the court to extend the repayment period if repayment according to guidelines will cause the obligor and his family to suffer unreasonable hardship. § 14.-43(d).

There is no evidence of Starck's "disposable earnings," however, if we assume (for illustrative purposes only) that the net resources found by the trial court of $970 are correct, Starck's payment of $340 child support (including health insurance) is 35% of his net resources, adding $200 monthly to that increases the percentage to 56% of his net resources. When the health insurance payment increased to $75 monthly, child support comprised 39% of Starck's net resources, adding arrearages increased his child support obligation to 59% of his net resources. Starck also testified that he had incurred debt during his periodic unemployment, to pay uninsured medical expenses, and to purchase a car. He further testified that he had no savings and no assets that could be liquidated. Based on the record as it existed in February 1992 and in light of the evidence that Starck's living expenses are $900 monthly, the finding of lack of hardship is against the great weight and preponderance of the evidence. The $200 monthly arrearage payment also exceeds the permissible percentage for withholding and is an abuse of discretion. Additionally, we have held that the $970 net resource figure is not supported by the evidence, that the finding of intentional underemployment is not supported by the evidence, and that the court may not consider the contribution of Starck's

current wife in determining the proper amount of child support or variance from child support guidelines. We sustain points of error ten and eleven.

Points six and seven complain of specific findings of the trial court relating to Starck's employment and capabilities; point twelve complains that the trial court's order is not in the best interest of the children. Because of our disposition of the other points, we do not reach points six, seven, and twelve. TEX. R.APP.P. 90(a).

We REFORM the judgment to delete the automatic increase in child support effective February 1, 1993;[15] we REVERSE the portion of the judgment setting arrearage payments and REMAND to the trial court to make further fact findings necessary to determine the proper amounts of arrearages to be paid monthly by Starck; and as modified, we AFFIRM.

---

14. Disposable earnings are defined as earnings remaining after the deduction from those earnings of any amounts legally required to be withheld, non-discretionary retirement contributions, union dues, and medical, hospitalization, and disability insurance coverage for the obligor and his or her children. § 14.30.

15. TEX.R.APP.P. 80(b)(2); *Abrams,* 713 S.W.2d at 197 (reforming judgment to delete automatic increases in child support).