**Opinion issued October 15, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00851-CV

———————————

**KORI LYNN PLOWMAN F/K/A KORI LYNN UGALDE, Appellant**

**V.**

**PHILIP ANDREW UGALDE, Appellee**

---

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-38295**

---

## MEMORANDUM OPINION

This case concerns a dispute over the amount of a father's child support obligation. When the parents divorced in September 2012, they agreed that their son would live primarily with the mother, the father would have expanded standard possession, and he would pay $3,000 per month in child support. The terms of their

agreement were incorporated into two documents: an agreement incident to divorce and a final decree of divorce signed by the trial court.

One year later, the father filed a motion to modify his child support obligation and, following a bench trial, the trial court reduced his monthly child support obligation to $1,510 per month, which represents the amount of child support that he would owe under the statutory guidelines based on his then-current level of income.

The mother raises three issues in her appeal. First, she contends that the trial court abused its discretion by modifying the child-support order without evidence of a material and substantial change in the father's circumstances or that the reduction was in the child's best interest. Second, she argues that the trial court abused its discretion when it failed to award her a money judgment for damages, representing the difference between what the father had agreed to pay and the amount the trial court was ordering him to pay subject to contempt. Third, she argues that the trial court's refusal to award her contract damages based on the Agreement Incident to Divorce violated the open courts provision of the constitution.

We affirm.

## Background

Philip Ugalde and Kori Lynn Plowman ended their marriage in September 2012, and a divorce decree was entered based on their negotiated resolution of all aspects of their separation, including division of property, child custody, and child support. The decree specifically references a contemporaneous agreement between them—an "Agreement Incident to Divorce"—and provides that it "incorporates [it] . . . by reference as part of this decree as if it were recited herein verbatim . . . ."

The Agreement Incident to Divorce contains a lengthy recitation of how the couple's many assets were to be divided. Regarding child custody and support, it states: "Parties agree to, and will seek in the final decree, a standard child support order" requiring Ugalde to pay "child support of $3,000.00 per month for the Parties' only child." The agreement further states that, "[t]o the extent permitted by law, the parties stipulate that this agreement is enforceable as a contract."

The divorce decree names both parents as managing conservators, with Plowman granted the exclusive right to designate their son's primary residence. It orders Ugalde to pay $3,000 per month in child support and to maintain health insurance for their son. The decree contains a finding by the trial court "that the provisions in this decree . . . constitute the parties' agreed parenting plan." It further provides that, "[t]o the extent permitted by law, the parties stipulate the

agreement is enforceable as a contract." The decree also contains a provision concerning future disputes over its terms:

> Settlement of Future Disputes
> It is agreed that before setting any hearing or initiating discovery in a suit for modification of the terms and conditions of conservatorship, possession, or support of the child . . . the parties shall mediate the controversy in good faith. . . . It is agreed that the party wishing to modify the terms and conditions of conservatorship, possession, or support of the child shall give written notice to the other party of a desire to mediate the controversy. If . . . the parties cannot agree . . . , the party desiring modification shall be released from the obligation to mediate and shall be free to file suit for modification.

At the time of the couple's divorce, Ugalde had been employed for seven months as a commercial loan officer, making an annual salary of $170,000, plus a one-time signing bonus of $50,000 and the possibility of annual, commission-based bonuses moving forward. That employment ended seven months after the divorce. A letter of resignation indicated that Ugalde had voluntarily resigned from his position; however, he testified at the modification hearing that his employer had given him the choice between (1) resigning and paying back only a portion of his $50,000 signing bonus or (2) being fired and required to return the entire signing bonus. Thus, according to Ugalde, his decision to leave his employment was not voluntary.

Ugalde was unemployed for approximately five months before he obtained a position as a vice president of portfolio development at a much-reduced salary of

$75,000 per year, again with the possibility of commission-based bonuses. Around that time, Ugalde filed his motion to modify the child-support obligation.

Ugalde held the vice president position for about seven months but was fired for performance reasons. He was unemployed for two more months. Then, in March 2014—one day before the hearing on the pending motion to modify—he accepted a new position as a vice president of market banking at a different lending institution earning an annual salary of $125,000, plus the possibility of discretionary bonuses.

Thus, to summarize, between the date of the divorce and the date of the hearing on the modification request, Ugalde was employed at the $170,000 salary for approximately seven months; employed at the $75,000 salary for approximately seven months; unemployed, intermittently, for approximately six months; and, finally, employed in a new position that paid a $125,000 salary.

Ugalde testified that, during his periods of unemployment and lower compensated employment, he "ended up basically cashing in all [of his] retirement accounts," an amount he estimated was "[p]robably more than $150,000," leaving him with substantially less savings and retirement funds at the time of the modification hearing. Ugalde used these funds to maintain his living situation, fund his job search, continue to pay his monthly $3,000 child-support obligation, replace a vehicle damaged in a car accident, and cover various other expenses.

5

Ugalde pointed to both his reduction in salary and his loss of retirement funds and savings as evidence of a material and substantial change in his financial circumstances to justify modification of his child-support obligation. He asked the trial court to reduce it from $3,000 per month—which was more than would have been required if the Family Code child-support guidelines had been used to set the amount—to a lesser amount of $1,510 per month. According to Ugalde and the admitted financial documents, the $1,510 amount corresponded to the statutory guidelines for his current employment at $125,000 gross annual income.

Plowman argued that Ugalde had not established a material and substantial change in circumstances, noting that his tax return actually showed an increase in salary during the period he was unemployed[1] and that, because he chose to access and spend such a large amount of his retirement funds, he wasted more money than he would have had access to had he continued in his earlier employment and not withdrawn anything from the retirement account. Plowman argued that Ugalde should not benefit from squandering his retirement funds unnecessarily.

The trial court also received evidence of Plowman's net monthly income, which was demonstrated to be approximately $8,700 and was higher than Ugalde's.

---

[1] This is because the $150,000 withdrawal of funds from the retirement account was treated, for tax purposes, as income.

The trial court made findings of fact and conclusions of law and found that Ugalde had established a material and substantial change in his circumstances. The trial court granted his motion to modify, applied the statutory guideline percentages, and ordered that his child support obligation be reduced to $1,510 per month, which the court found was in the child's best interest.

**Material Change in Circumstances**

In her first issue, Plowman contends that the trial court abused its discretion by finding that Ugalde had established a material and substantial change in his circumstances to support modification of his child support obligation from the agreed-to amount of $3,000 per month to the guideline-based amount of $1,510 per month and that such modification was in the best interest of the child.

**A.    Standard of review**

"A trial court has discretion to set child support within the parameters provided by the Texas Family Code." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). The court is also given broad discretion to modify the amount to increase or decrease the obligation. *In re D.S.*, 76 S.W.3d 512, 520 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to

guiding rules or principles. *Id.*; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Id.*

In a bench trial, "the trial court's findings of fact have the same weight as a jury's verdict." *Brejon v. Johnson*, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Challenged findings of fact are not determinative unless they are supported by the record. *Id.* We review the sufficiency of the evidence to determine whether the trial court abused its discretion in making such findings. *Id.* In this context, "legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion." *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). "A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the trial court's judgment." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The trial court, as factfinder, is the sole judge of the credibility of the witnesses, and the trial court's resolution of issues of credibility are not subject to reevaluation on appeal. *See Puntarelli v. Peterson*, 405 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

8

**B.     Modification of agreed-to child support amount**

Agreed child support amounts are subject to modification. *In re G.J.S.*, 940 S.W.2d 289, 294 (Tex. App.—San Antonio 1997, no writ). Section 156.401 of the Family Code provides as follows:

> If the parties agree to an order under which the amount of child support differs from the amount that would be awarded in accordance with the child support guidelines, the court may modify the order only if the circumstances of the child or a person affected by the order have *materially and substantially changed* since the date of the order's rendition.

TEX. FAM. CODE ANN. § 156.401(a-1) (West 2014) (emphasis added).

The trial court may consider the child-support guidelines to determine whether there has been a material or substantial change of circumstances to warrant a modification of an existing child-support order. TEX. FAM. CODE ANN. § 156.402(a) (West 2014); *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 666 (Tex. App.—Houston [14th Dist.] 2011, no pet.). However, "[a] child support order that is not in compliance with the guidelines does not by itself establish such a material and substantial change in circumstances." *In re G.J.S.*, 940 S.W.2d at 294; *In re A.T.A.L.*, No. 05-11-01666-CV, 2013 WL 1912618, at *2 (Tex. App.—Dallas May 8, 2013, no pet.) (mem. op.). Disparity between the statutory guideline amount and the agreed-to amount is just one factor to be considered by the trial court. *Cole v. Cole*, 882 S.W.2d 90, 92 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Elliott v. Elliott-Weber*, No. 14-04-00130-CV, 2005 WL 481353, at *3 (Tex.

9

App.—Houston [14th Dist.] Mar. 1, 2005, no pet.) (mem. op.). The court also may consider "other relevant evidence." TEX. FAM. CODE ANN. § 156.402(b) (West 2014); *Rumscheidt*, 362 S.W.3d at 666.

"To determine whether there has been a substantial and material change, the court must compare the financial circumstances of the child and the affected parties at the time the order was entered with their financial circumstances at the time the modification is sought." *Melton v. Toomey*, 350 S.W.3d 235, 238 (Tex. App.—San Antonio 2011, no pet.); *In re C.C.J.*, 244 S.W.3d 911, 917–18 (Tex. App.—Dallas 2008, no pet.); *Cole*, 882 S.W.2d at 92. "Without evidence setting out the financial circumstances" of the parties at these relevant times, "the family court cannot make a determination that there has been a material and substantial change." *Cole*, 882 S.W.2d at 92; *see In re C.C.J.*, 244 S.W.3d at 917–18. As the movant, it was Ugalde's burden to present evidence of historical and current financial circumstances. *Melton*, 350 S.W.3d at 238.

Not all changes in income qualify as material and substantial. "Temporary slumps do not rise to the level of a material and substantial change in condition and should not support a permanent change in child support levels." *Starck v. Nelson*, 878 S.W.2d 302, 308 (Tex. App.—Corpus Christi 1994, no writ). Instead, what is required is a marked decrease in income or steady decline without offsetting circumstances. *See Blanco v. Garcia*, 767 S.W.2d 896, 898 (Tex. App.—Corpus

Christi 1989, no writ); *Watkins v. Austin*, 590 S.W.2d 830, 832 (Tex. App.—Dallas 1979, no writ).

Trial courts look not only to a paying parent's salary, but also to other sources of income. *In re G.J.S.*, 940 S.W.2d at 293; *Clark v. Jamison*, 874 S.W.2d 312, 317 (Tex. App.—Houston [14th Dist.] 1994, no writ). For example, a trial court may take into consideration whether a parent has other assets at his disposal with which to pay child support. *See In re G.J.S.*, 940 S.W.2d at 293. Courts also can consider the parent's earning potential, not just actual income, to set the child support amount. *Id.*; *In re Striegler*, 915 S.W.2d 629, 638 (Tex. App.—Amarillo 1996, writ denied). Unless a movant has established a material and substantial change, there is no basis for reducing a child-support obligation to be in line with statutory guidelines. *See* TEX. FAM. CODE ANN. § 156.401(a-1); *Cole*, 882 S.W.2d at 92.

The presumptively applicable percentage of net resources that should be paid as child support for a single child is 20%.[2] TEX. FAM. CODE ANN. § 154.125(b) (West 2014). Ugalde contends that applying that percentage to his net resources results in a child-support obligation of $1,510. Plowman does not dispute that the guidelines, if applied, would result in a $1,510 monthly obligation. Instead, she argues that Ugalde has not demonstrated a material and substantial change in

---

[2]     Unless the parent's income reaches into the high-income bracket designated by the statute. TEX. FAM. CODE ANN. § 154.125(b).

11

his circumstances to permit the modification or that the modification is in the child's best interest.

## C.    Trial court did not abuse discretion

At the time Ugalde agreed to pay $3,000 per month, he was earning $170,000 annually. Between then and the hearing on his motion to modify child support, he had six months without employment, seven months of employment at less than half the earlier salary, an unexpected obligation to repay $20,000 of his signing bonus, and, ultimately, a job earning $125,000 annually.

The statutory provisions on modification of child support permit the trial court to consider, as a factor, the amount of support that would be required under the guidelines. TEX. FAM. CODE ANN. § 156.402(a). Ugalde had been timely paying much more than that amount, even during his periods of unemployment and less-paid employment. During a period of unemployment, he withdrew approximately $150,000 from his retirement account, which allowed him to remain current on his child-support obligation and pay his other expenses, but doing so, he argued, "wiped out" his savings and retirement and left him without a cushion if he were to, again, face unemployment.

The trial court received evidence that Plowman had significant net resources to contribute to the support of the child. Ugalde testified that he believed a

12

reduction in his support obligation to the statutory amount would be in the child's best interest.

We conclude that Ugalde supplied legally and factually sufficient evidence and the trial court did not abuse its discretion in concluding that Ugalde had experienced a material and substantial change in his circumstances to warrant modification of his child-support obligation. *See Starck*, 878 S.W.2d at 308 (change in paying parent's income can qualify as material and substantial change); *Rumscheidt*, 362 S.W.3d at 666 (trial court may consider child support guidelines to determine whether material and substantial change in circumstances has occurred to warrant modification); *see also* TEX. FAM. CODE ANN. § 156.402(a); *cf. In re G.J.S.*, 940 S.W.2d at 293 (whether other assets are available is relevant to parent's ability to pay child support).

We further conclude that there was legally and factually sufficient evidence that modification was in the child's best interest. Without modification, Ugalde would have been obligated to pay double the statutory amount in child support while making 26% less in a new job and without the cushion that the withdrawn retirement funds had provided in the past. It was within the trial court's discretion to determine that it was in the child's best interest to have his father's financial obligation reduced to a more manageable level, subject to the possibility of future modification should his situation improve. *See Gillespie v. Gillespie*, 644 S.W.2d

449, 451 (Tex. 1982) (noting broad discretion given to trial court to determine best interest of child); *see also* TEX. FAM. CODE ANN. § 154.122(a) (child support amount that conforms to statutory guidelines presumed in best interest of child); *In re A.M.P.*, 368 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Accordingly, we overrule Plowman's first issue.

## The Parties' Agreement as an Enforceable Contract

In her second issue, Plowman argues that "the trial court should have granted [her] the difference between the present value of the agreed child support and the court ordered child support as a money judgment subject to collection [under contract law] based on the Agreement Incident to Divorce." She contends that the trial court abused its discretion by not "awarding [her] the benefit of the bargain" based on that agreement.

Ugalde responds that the issue of contract damages has been waived because Plowman's live pleading did not seek breach-of-contract damages and she has not appealed the trial court's decision denying her trial amendment, in which she sought to add a claim for breach-of-contract damages. According to Ugalde, the trial court could not have erred by denying Plowman damages that she had not pled.

## A.     Denial of trial amendment

During the modification hearing, Ugalde objected to Plowman's question whether Ugalde planned to continue paying $3,000 even if the trial court were to reduce his obligation. Ugalde argued that the agreement to pay $3,000 was not an enforceable contract and Plowman could not recover contract damages for its breach. There was a lengthy discussion among the trial court and the parties, during which it was discussed that the breach-of-contract claim would equal at least $180,000. Ugalde argued that Plowman's live pleading had only included a defensive argument against modification without any affirmative claim for breach of contract or request for contract damages. According to Ugalde, the pleading did not inform him that she would be seeking money damages.

The discussion culminated with the trial court ruling that Plowman's pleadings did not support the relief she was requesting. The trial court allowed Plowman to submit a proposed amended pleading for its consideration. Plowman did so, but Ugalde objected, arguing surprise and attempted delay.  The trial court denied Plowman's trial amendment. However, the court did allow Plowman to question Ugalde about whether he intended to pay the full $3,000 per month if the court were to modify the child support order. He stated that he would not. The court informed the parties that it would enter a finding concerning whether the agreement was a contract but would not entertain a claim for contract damages.

The trial court made findings of fact and conclusions of law, including that (1) under Section 153.007 of the Family Code, the child-support amount that the parties had agreed to was part of an Agreed Parenting Plan; (2) under Section 153.007(c), it was not enforceable as a contract; (3) the child support obligation was subject to modification based on a material change in circumstances; (4) the section of the divorce decree on "child support" provides only for court-ordered child support, not a contract obligation; and (5) the divorce decree does not expressly incorporate into its terms a contractual support agreement.

## B.     Without a pleading to support the award of damages or an appeal of the denial of a trial amendment to request such relief, Plowman cannot successfully argue trial court error in denying her damages claim

A judgment of the court must conform to the pleadings and cannot award more than requested, absent trial by consent. TEX. R. CIV. P. 301; *Binder v. Joe*, 193 S.W.3d 29, 32 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Ugalde did not consent to trial on Plowman's damages claim. Neither did the trial court allow it. Instead, the trial court denied Plowman's request for a trial amendment. Plowman has not appealed that ruling. Under these facts, we agree with Ugalde that Plowman cannot prevail on her unpleaded claim for breach-of-contract damages.[3]

---

[3]    We note that a since-repealed provision of the Family Code allowed enforcement of child-support agreements as contracts. ACT OF MAY 20, 2003, 78TH LEG., R.S., ch. 480, § 1, 2003 Tex. Gen. Laws 1747, 1747. That provision was replaced with Section 154.124(c), which no longer allows enforcement of child-support agreements as contracts. *Compare Bruni v. Bruni*, 924 S.W.2d 366, 367–69 (Tex.

16

TEX. R. APP. P. 38.1(f), (i); *Walling v. Metcalfe*, 863 S.W.2d 56, 58–59 (Tex. 1993) (discussing unassigned error); *Stoll v. Lewis*, No. 01-08-00556-CV, 2009 WL 1331351, at *3 (Tex. App.—Houston [1st Dist.] May 14, 2009, pet. denied) (mem. op.) ("Except in cases of fundamental error, neither claimed or at issue here, we may not reverse a lower court's judgment without an assignment of error, whether by issues or points.").

We overrule Plowman's second issue. Given our resolution of this issue, we do not reach Plowman's third issue.

## Conclusion

The judgment of the trial court is affirmed.


Harvey Brown
Justice

Panel consists of Justices Jennings, Higley, and Brown.

---

1996) (enforcing child support agreement in contract under earlier version of law) *to Kendrick v. Seibert*, 439 S.W.3d 408, 410–11 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that, under Section 154.124(c), child-support agreements "are not enforceable as a contract" but agreements concerning other aspects of divorce may be enforceable as contracts) (internal citations omitted).

Plowman admits that Section 154.124(c) does not allow enforcement of a child support agreement as a contract; however, she attempts to avoid this provision by arguing that she is not seeking to "enforce" a contract but to obtain "damages . . . for breach of contract." While we fail to see a distinction where Plowman suggests one exists, we do not reach the merits of her claim due to her failure to plead a cause of action for breach of contract.