

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE INTEREST OF | § | No. 08-24-00333-CV |
| A.E.C. and A.A.C., | § | Appeal from the |
| Children. | § | 388th District Court |
| | § | of El Paso County, Texas |
| | § | (TC#2017DCM4864) |

## MEMORANDUM OPINION

Angel Carrera appeals from the trial court's order enforcing and modifying support obligation in favor of Appellees Esmeralda Heras and the Office of the Texas Attorney General. For the following reasons, we affirm.

## I. BACKGROUND

Carrera and Heras divorced on October 3, 2018. The divorce decree named Heras as managing conservator and Carrera as possessory conservator of their two minor children, A.E.C. and A.A.C. Carrera was ordered to pay $900 per month in child support, pay $100 per month in cash medical support, and provide health insurance coverage for both children.

By July 2022, Carrera's child support payments became inconsistent. On May 2, 2023, the Office of the Texas Attorney General (OAG), through the El Paso County Domestic Relations

Office, initiated enforcement proceedings and a suit for modification of child support. The OAG alleged Carrera failed to comply with the child support order and claimed that a substantial and material change in circumstances warranted modification of the child support obligation. Carrera denied the noncompliance allegations and counter-petitioned for a reduction in child support based on his current income. According to Carrera, his child support payments should be decreased because it had been "three years since the order to be modified was rendered/last modified, and the monthly amount of support differs by 20% or $100 from the amount that would be awarded in accordance with the guidelines in chapter 154 of the Texas Family Code."[1] In turn, Herrera cross-petitioned for an upward modification in child support.

The trial court held a modification hearing on June 28 and July 24, 2024. Carrera testified that he held an architecture degree and at the time of the divorce was employed as an account manager at TSK Innovations in El Paso, Texas, earning an estimated monthly salary of $3,000. Around 2019, Carrera decided to stop working for TSK Innovations and had not held a "formal job" since then. He received paid vacation and two months' salary upon his departure. After the divorce, Carrera lived in Ciudad. Juarez, Chihuahua, Mexico for some time, where he operated a construction company. By the time of the hearing, he had moved back to El Paso and was commuting to Juarez for his business. Carrera also testified about taking 19 vacations with his new wife since 2022 to various locations in Europe, Mexico, and the United States. Photos of these vacations were admitted in evidence.

Carrera's construction company reported an average of two million pesos in 2023, but he testified that his annual income was around $17,500, acknowledging that he did not report $14,000

---

[1] Carrera also filed a petition to enforce the property division, which he eventually nonsuited.

of it to the Mexican government. He had not filed tax returns in the United States and did not provide official tax documents from Mexico. The trial court continued the hearing, requesting evidence of his income by way of tax reports:

> I'm going to stop the case right here, and I want to see the . . . Mexican [tax] report[s] for 2022, 2023, if possible, 2021, from Mr. Carrera next time we come. And I also want to see his 1040 for 2021, 2022 and 2023, okay, because I want to be fair, and I want to consider the evidence, based on his income.

The trial court also asked that Carrera's accountant appear.

On July 24, 2024, the hearing resumed. Although Carrera provided his Mexican tax reports for 2021, 2022, and 2023, his accountant was not present, which raised questions about Carrera's net income. The parties engaged in extensive argument due to the foreign nature of the documents, the uncertainty of Carrera's net income, and Carrera's admission that he does not report all of his earnings.

Carrera testified that he lives with his new wife and stepson, who pay the entire $2,200 mortgage for their home. The utilities amount to $300 per month, plus a $40 internet bill, which Carrera stated he splits equally with his wife and stepson. Carrera does not contribute to groceries. As for transportation, Carrera testified that his wife pays his car and car insurance payments, totaling $500 per month. Carrera covers his gas expenses, which he testified are around $200 per month, and he also pays $40 per month for his children's cell phones. The only testimony regarding his wife's resources was that she runs a food and cleaning business; there was no testimony regarding her income.

The trial court signed its order enforcing and modifying support obligations on August 12, 2024. It reduced Carrera's child support from $900 per month to $702.72 per month. The trial

3

court also ordered Carrera to pay $200 per month in cash medical support and $100 per month toward an arrearage balance of $12,940.20.[2]

Carrera requested findings of fact and conclusions of law on August 26, 2024, and filed his notice of appeal on September 11, 2024. The trial court entered its findings of fact and conclusions of law on October 2, 2024. The trial court's pertinent findings are as follows:

> Carrera judicially admitted he voluntarily quit his job at TSK, a company in the U.S., presented no evidence that he was threatened or forced to resign this position, and admitted that he was paid a severance package of accrued vacation days and two months pay.

> Shortly after quitting his job with TSK, where he earned a little over $3,000.00 per month, [] Carrera opened up his own construction company in Chihuahua, Mexico.

> .　　.　　.

> The roughly $17,500.00 per year [] Carrera testified that he earns from his wholly-owned construction company is significantly less than what he could earn if he sought employment with a United States company, given his age, experience, his college degree, and the extensive knowledge and experience he has in the construction industry.

> Although the testimony presented reveals that [] Carrera's construction company generated sales of more than 2,000,000.00 pesos (or over $100,000.00 in U.S. dollars) in 2023, he has presented no credible evidence of what profit margin on these sales was or what he withdraws as personal income from the net profits of this company.

> The Court agrees with the DRO's recommendation that income should be imputed to [] Carrera considering the relevant background circumstances of [] Carrera, to include his judicial admission that he pays no rent or mortgage payment for the home he lives in and further admission that many of his other living expenses are paid by his wife and/or step-son [sic].

> .　　.　　.

> Carrera has intentionally under-reported his construction company's sales by failing . . . to record the amount that company has generated from cash sales and has also failed to report the net profit his construction company earns from sales.

---

[2] Carrera does not challenge the medical support or arrears obligations on appeal.

4

As a result of [] Carrera's intentional unemployment and failure to provide sufficient information to enable the Court to determine his net resources, the Court has calculated guideline support of $409.31 per month based on its finding that Angel Carrera has an earnings potential of $25, 000.00 per year. It has also calculated an additional monthly child support amount of $293.40 that [] Carrera should pay by imputing to him income of $1,175.00 from testimony that he has no rent or mortgage payment obligation and that he does not have to pay many other living expenses he would otherwise be required to pay if these expenses were not paid by his current wife and step-son [sic]. This additional child support amount of $293.40 is authorized under Texas Family Code § 154.0655(c). Adding the sum of $409.31 per month to the additional sum of $293.40 per month results in a total monthly child support of $702.72 that [] Carrera should be ordered to pay.

Under Texas Family Code § 154.123(b)(2) and (b)(3), the ability of [] Carrera to contribute to the support of the child and the financial resources he has available for the support of the child are two specific factors this Court has relied on to set a child support amount that is different from and varies from the child support guidelines.

The failure of [] Carrera to provide complete and accurate evidence of his annual earnings once he left TSK and opened his own construction business in Mexico prevents this Court from making a child support guidelines calculation.

.        .        .

Carrera admitted his construction company earns substantially more income than is reported because the company does not report income it receives from construction jobs that are paid in cash.

The Court does not find [] Carrera's testimony that he earns only about $17,500.00 per year credible and further finds that he earns significantly more that this amount based on the following considerations: (a) his failure to produce tax returns or financial documents that show his annual income; (b) his admission that his construction company does not report cash transactions; ( c) evidence that his construction company's annual sales revenue exceed 2,000,000.00 pesos (identified as the equivalent $100,000.00 U. S. dollars); (d) his inability to answer basic financial questions about his company and its profitability; ( e) testimony that he is college educated and has an architecture degree; and (f) evidence that after the divorce he has taken 19 vacations to various places in Europe, Mexico, and the U.S., at great expense.

The Court finds that [] Carrera earns a meaningful profit margin from the two million (2,000,000.00) pesos per year or more in reported sales that Carrera acknowledged was generates in 2023 from his wholly-owned construction business that he operates in Mexico.

5

The Court finds that [] Carrera has intentionally under-reported his income by representing to the Court that he earns roughly $17,500.00 per year, when the evidence of his lifestyle in general reflects his actual earnings are much higher.

.　　.　　.

The Court finds that Carrera has an earnings potential of at least $25,000.00 per year in the United States, given his education, age, and work experience and that if taxes and all other deductions (to include the $200.00 per month cash medical support) are subtracted from this gross income amount, the net resources Carrera would have available would be $1637.28 per month. This sum, when then multiplied by 25 percent for 2 children, results in a monthly guidelines support calculation of $409.31.

Carrera has extra money in his pocket (to use DRO trial counsel's terminology) of approximately $1, 175.00 per month which he would otherwise be required to pay were it not for the fact that his current wife and son-in-law pay the entire $2,200.00 mortgage on the house he resides in and also pay for two-thirds of all other household living expenses. The Court therefore finds that Carrera should be ordered to pay- in addition to $409.31 per month in child support based on his earnings potential -- 25 percent of this additional income of $ 1,175.00 the Court imputes to him -- or the sum of $293.75 per month, for a total monthly child support amount of $702.71 per month.

.　　.　　.

The material and substantial change in the circumstances of the parties that warrants a downward modification of [] Carrera's child support amount from $900.00 per month to $702.72 per month is [] Carrera is no longer employed with TSK and now relies on income paid to him from his wholly-owned construction company in Mexico.

.　　.　　.

The Court concludes that rather than reducing Carrera's child support to $702.71 per month, it could have exercised its discretion to deny [] Carrera's request for a modification altogether and kept his support at $900.00 per month based on his failure to report the net profit his wholly-owned construction company generates from sales.

On appeal, Carrera argues that "[t]he trial court erred in imputing an additional monthly income of $1,175 to Appellant income based on his new spouse and stepson's financial contributions to their joint living expenses when modifying his child support obligation."

## II. STANDARD OF REVIEW

A trial court's child support order will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *see also Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993). In making this determination, we must view the evidence in the light most favorable to the actions of the trial court and indulge every legal presumption in favor of the judgment. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). "The judgment must be affirmed if it can be upheld on any legal theory supported by the evidence." *Worford*, 801 S.W.2d at 109. If there is some evidence of a substantive and probative character to support the decision, the trial court did not abuse its discretion. *Holley*, 864 S.W.2d at 706.

In applying this standard to a modification suit, we employ a hybrid appellate review, asking: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Clark v. Binder*, No. 03-22-00631-CV, 2024 WL 2868277, at *3 (Tex. App.—Austin June 7, 2024, no pet.) (mem. op.); *Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.). The "sufficiency of the evidence is not an independent ground; it is simply a factor in assessing whether the trial court abused its discretion." *Clark*, 2024 WL 2868277, at *3.

## III. APPLICABLE LAW

Child support obligations are commonly determined by applying statutory guidelines provided by the Texas Family Code, and a support order conforming to the guidelines is presumed

to be in the child's best interest. Tex. Fam. Code. Ann. § 154.122(a). In setting child support obligations, the trial court must calculate the obligor's net resources. *Id*. §§ 154.062(a), (b). The obligor is statutorily required to furnish information sufficient to accurately identify their net resources and ability to pay child support. *Id*. § 154.063; *In re N.T.*, 335 S.W.3d 660, 666 (Tex. App.—El Paso 2011, no pet.). The trial court may properly determine that the obligor has higher net resources than alleged based on testimony and other evidence before it. *See id*.; *see also Burney v. Burney*, 225 S.W.3d 208, 214 (Tex. App.—El Paso 2006, no pet.). In addition to actual earnings, the court may consider a parent's earning potential. *Int. of E.I.*, No. 02-24-00015-CV, 2024 WL 4849746, at *5 (Tex. App.—Fort Worth Nov. 21, 2024, no pet.) (mem. op). (en banc). The court must engage in a case-by-case determination in deciding whether child support should be set based on earning potential or actual earnings. *Clark*, 2024 WL 2868277, at *2.

Modification of a child support order may be ordered upon a showing that the circumstances of the child or a person affected by the order have materially and substantially changed since the order was signed. Tex. Fam. Code Ann. § 156.401. In a modification proceeding, "the trial court should examine the circumstances of the child and parents at the time the prior decree was rendered, in relation to the circumstances existing at the time modification of the prior order is sought." *Holley*, 864 S.W.2d at 706. In setting a modified obligation, the Texas Family Code expressly forbids consideration of the resources of a new spouse. Tex. Fam. Code Ann. § 156.404. However, the trial court has discretion to apply child support guidelines to the earning potential of the obligor upon a finding of an obligor's intentional unemployment or underemployment. *Id*. § 154.066; *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011). If the court makes such a finding and lacks evidence of the parent's resources, it "shall consider relevant background circumstances regarding the obligor, including . . . the obligor's residence." Tex. Fam. Code Ann.

§ 154.0655(c)(1)(B). Additionally, "[i]n determining whether application of the guidelines would be unjust or inappropriate under the circumstances," § 154.123(b) states that the trial court "shall consider evidence of all relevant factors, including . . . the ability of the parent to contribute to the support of the child," "any financial resources available for the support of the child," and "whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity. *Id*. §§ 154.123(b)(2), (3), (10).

## IV. ANALYSIS

According to Carrera, the trial court erred in imputing an additional sum of $1,175 to his income based on his new spouse's and stepson's financial contributions to their joint living expenses.[3] In support of his position, Carrera cites Texas Family Code Ann § 156.404, which prohibits the trial court from including a new spouse's net resources when calculating the child support amount in a modification suit, as well as opinions from the Texarkana and Corpus Christi Courts of Appeals (*Knott* and *Starck*, respectively) regarding the same. The OAG counters that the trial court did not abuse its discretion when it modified Carrera's child support obligation based on a finding of intentional unemployment and testimony regarding housing and living expenses. We find the legal authority upon which Carrera relies distinguishable, as neither involves a finding of intentional unemployment based on the evidence before it.

In *Starck*, the father challenged the modified child support obligation on grounds that the trial court improperly considered his new spouse's income. *Starck v. Nelson*, 878 S.W.2d 302, 305 (Tex. App.—Corpus Christi–Edinburg 1994, no writ). The trial court found that the new spouse's

---

[3] Carrera concedes that "the trial court did not consider [his] new wife's income or her financial contributions to their joint living expenses to deviate from the guidelines but it directly imputed an[] additional amount of income to [him] based on his wife's contributions to their joint expenses."

contribution to their joint living expenses enabled the father to pay more in child support than if he were solely responsible for his living expenses. *Id*. at 306. The court of appeals acknowledged that "the precise language of [what is now § 156.404[4]] does not prohibit the trial court's action in this case," but reading the statutory scheme of the Texas Family Code cohesively, it opined that "[p]ermitting the court to deviate from the child support guidelines because the obligor's new spouse contributes to their joint living expenses allows the court to do indirectly what the statute directly prohibits." *Id*. In *Starck*, there was "no evidence to support a finding of intentional underemployment." *Id*. at 307.

In *Knott*, the father appealed the modification of child support, arguing the trial court erred by adding his new spouse's resources when calculating his child support obligation. *In re Knott*, 118 S.W.3d 899, 901 (Tex. App.—Texarkana 2003, no pet.). The court found that the new spouse's earnings were improperly included in calculating the father's income. *Id*. at 905. However, the court made a significant distinction by noting that:

> [Mother] did not allege [father] was underemployed. Nor did she allege [father] hid his business income by either diverting income to [his new spouse] or by paying household expenses with business funds. *Had [mother] alleged and proved fraud or intentional underemployment . . . the trial court would have been statutorily authorized to deviate from the child support guidelines*. Such a finding, however, was not made by the trial court. Accordingly, the trial court was not justified in deviating from the guidelines.

---

[4] Added in 1995, Texas Family Code Ann § 156.404, "Net Resources of New Spouse," reads as follows:

    (a)  The court may not add any portion of the net resources of a new spouse to the net resources of an obligor or obligee in order to calculate the amount of child support to be ordered in a suit for modification.

    (b) The court may not subtract the needs of a new spouse, or of a dependent of a new spouse, from the net resources of the obligor or obligee in a suit for modification.

The relevant portion of § 14.056(c) of the Family Code at the time, provided that "A court may not add any portion of the net resources of a new spouse to the net resources of an obligor or obligee in order to calculate the amount of child support to be ordered on a motion to modify." *Starck v. Nelson*, 878 S.W.2d 302, 305 (Tex. App.—Corpus Christi–Edinburg 1994, no writ).

*Id.* (citations omitted) (emphasis added).

Here, the trial court's specific finding based on the evidence before it, that "Carrera intentionally chose to quit his job with TSK and became intentionally unemployed,"[5] "justifie[d] a variance from the guidelines" and required the court to consider, *inter alia*, Carrera's "ability [] to contribute to the support of the child," "any financial resources available for the support of the child," and "whether [Carrera] has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity." Texas Family Code Ann §§ 154.123(b)(2), (3), (10). The trial court did just that, specifying:

> Under Texas Family Code §154.123(b)(2) and (b)(3), the ability of [] Carrera to contribute to the support of the child and the financial resources he has available for the support of the child are two specific factors this Court has relied on to set a child support amount *that is different from and varies from the child support guidelines.*

(emphasis added).

And based on the housing and other benefits furnished by other persons, the trial court calculated 25% of the "extra money" Carrera had in his pocket as a result:

> Carrera has extra money in his pocket (to use DRO trial counsel's terminology) of approximately $1,175.00 per month which he would otherwise be required to pay were it not for the fact that his current wife and son-in-law pay the entire $2,200.00 mortgage on the house he resides in and also pay for two-thirds of all other household living expenses. The Court therefore finds that Carrera should be ordered to pay-in addition to $409.31 per month in child support based on his earnings potential--25 percent of this additional income of $ 1,175.00 the Court imputes to

---

[5] *See* § 154.066 ("If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor."); *Matter of Marriage of Contreras*, No. 13-21-00063-CV, 2022 WL 17983483, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2022, no pet.) (mem. op.) ("Section 154.066 of the Texas Family Code provides that a trial court may order a parent to pay child support beyond the amount the parent's income would ordinarily indicate under the guidelines if the parent could potentially earn more but has intentionally chosen not to.").

him--or the sum of $293.75 per month, for a total monthly child support amount of $702.71 per month.[6]

Because of the intentional unemployment finding, the trial court could, and was *required* to, consider Carrera's ability to provide for the child based on the financial resources available to him as enumerated in the relevant statutory factors. *In re S.B.C.*, 952 S.W.2d 15, 19 (Tex. App.— San Antonio 1997, no pet.). In *S.B.C.*, the father similarly complained that the trial court improperly considered the income of his fiancée in denying his downward modification. *Id*. The trial court's findings included that the father had no need to work to pay household expenses and his fiancée paid for him to reside in her home. *Id*. On appeal, the father cited *Starck* in an attempt to invoke the statutory prohibition against considering spousal contributions when determining an obligor's child support amount. *Id*. However, the court found that the trial court's findings supported the conclusion of father's intentional unemployment. *Id*. The court affirmed the judgment and reasoned:

> The trial court, as a factfinder, may have been persuaded that [father] was remaining unemployed because his fiancée was supporting him. Voluntary unemployment cannot serve as an excuse for avoiding or reducing child support obligations, and it would have been reasonable for the court to believe that [father's] generous fiancée contributed to his desire to remain unemployed.

---

[6] Moreover, the trial court, when applying § 154.066 (i.e., upon finding intentional unemployment), "shall consider relevant background circumstances regarding the obligor, including . . . the obligor's . . . residence." Tex. Fam. Code. Ann. § 154.0655. When determining child support in a modification suit, "[t]he best interest of the child should remain the trial court's primary consideration." *In Int. of Q.D.S.*, No. 04-17-00105-CV, 2018 WL 1831686, at *5 (Tex. App.— San Antonio Apr. 18, 2018, no pet.) (mem. op.). In deviating from the child support guidelines, the trial court identified its reliance on § 154.0655(c):

> The Court agrees with the DRO that [] Carrera should be granted a child support reduction based on the relevant background circumstances that apply to Carrera as an obligor, in accordance with Texas Family Code § 154.0655(c).

We note that Carrera maintains the provisions of § 154.0655(c) are inapplicable to the present case because "the trial court was not terminating [his] obligation to provide support pursuant to Section 154.006[.]" But subsection § 154.0655(c) does not cite to § 154.006 (Termination of Duty of Support); it cites to § 154.066 (Intentional Unemployment or Underemployment). Tex. Fam. Code Ann. § 154.0655(c).

*Id.*

Contrast in, *J.C.K.*, the father challenged the trial court's consideration of income generated by his and his new wife's community property that was subject to the sole management and control of his non-obligor wife. *In re J.C.K.*, 143 S.W.3d 131, 135–36 (Tex. App.—Waco 2004, no pet.). The court concluded that there was no evidence of intentional unemployment and no justification to deviate from the child support guidelines. *Id.* at 137. It therefore held that the income generated by the couple's community property should not have been included in calculating the father's net resources. *Id.* at 138. However, the court directly addressed the distinct nature of cases involving a finding of intentional unemployment:

> It must be noted that the Corpus Christi Court of Appeals has determined that a court should not consider the resources of a non-obligor spouse as a basis to vary from the support guidelines under section 154.123. *See Starck*, 878 S.W.2d at 306 ("Permitting the court to deviate from child support guidelines because the obligor's new spouse contributes to their joint living expenses allows the court to do indirectly what the statute directly prohibits."). We agree that the resources of a non-obligor spouse should not be the sole basis to vary from the guidelines. *However, if the obligee presents evidence that the obligor has intentionally or voluntarily reduced his earnings or earning potential, then the best interest of the child may dictate that the resources of a non-obligor spouse should be considered in deciding whether to vary from the guidelines.* Tex. Fam. Code Ann. § 154.123(a).

*Id.* at 137–38 (emphasis added).

Viewing the evidence in the light favorable to the trial court's decision, we cannot conclude the trial court abused its discretion in modifying the child support obligation as it did. *See Clark*, 2024 WL 2868277, at *3; *see also A.R.W.*, 2019 WL 6317870, at *7 ("We review the evidence in light of the § 154.123 factors and favorably to the trial court's decision."); *In re E.R.T.*, No. 04–15–00071–CV, 2015 WL 9486824, at *2 (Tex. App.—San Antonio Dec. 30, 2015, no pet.) (mem. op.) (holding that trial court as factfinder is afforded great latitude in determining child's best interest with respect to child support modification); *Coburn v. Moreland*, 433 S.W.3d 809, 823

(Tex. App.—Austin 2014, no pet.) ("We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence.").

Carrera's sole issue is overruled.

## V. CONCLUSION

Finding no error, we affirm the trial court's judgment.

LISA J. SOTO, Justice

May 29, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ